539 A.2d 1291

COMMONWEALTH of Pennsylvania, Appellant,

v.

Robert Harvey WEIDENMOYER and Deborah Jo Carter, Appellees.

Supreme Court of Pennsylvania.

Argued Nov. 13, 1987.

Decided April 4, 1988.

Mary M. Killinger, Chief, Appeal Div., Fort Washington, James W. Stauk, Roslyn, for appellant.

4

John G. McDougall, Philadelphia, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

Appellees Robert H. Weidenmoyer and Deborah Jo Carter were convicted of violations of the Controlled Substance Drug, Device and Cosmetic Act[1] and of criminal conspiracy.[2] Weidenmoyer was sentenced to a term of imprisonment of one and one-half to five years, and Carter to a term of two to twenty-three months. The Superior Court reversed the sentences and relinquished jurisdiction. 350 Pa.Super. 630, 503 A.2d 454. The Commonwealth sought review of that decision in this Court, and we granted allocatur to address the question of whether the search warrant executed by police to recover evidence used against appellees was based on probable cause under Art. 1 Sec. 8 of the Pennsylvania Constitution.[3]

On March 1, 1983, Trooper Walter A. Weniger, Jr., of the Pennsylvania State Police applied for a warrant to search the premises of 439 Main Street in Trappe, Pennsylvania, based upon the following affidavit:

1. The affiant in this affidavit is Tpr. Walter A. WENIGER, Jr., of the Penna. State Police. Tpr. WENIGER has been a member of the State Police for over fifteen (15) years. He has worked in the Narcotics Field for over ten (10) years and has been involved in over five-hundred (500) drug investigations. He is currently assigned to the

1. Act of April 14, 1972, P.L. 233, No. 64, § 13, *as amended*, 35 P.S. § 780–113.

2. 18 Pa.C.S. § 903.

3. Art. 1 Sec. 8 of the Pennsylvania Constitution states:
 The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize a person or thing shall issue without describing them as nearly as can be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Region II Narcotics Strike Force which investigates drug violations in Southeastern Penna.

2. On 28 February 83, the affiant received information from Cpl. Gregory DELP, Patrol Unit PSP Limerick, that on 27 February 83, at approximately 1945 hours, he was involved in an interview with Hazel Maxine COON, W–F–35, DOB—9-23-47, from Semmes, Ala., in reference to drug information concerning Robert Harry WEIDEN-MOYER, aka "BABBIT". Ms. COON related that she was staying at BABBIT'S residence in Trappe, Penna., which is located at 439 Main Street, Trappe, Penna., with a Walt KUGLER. They stayed at Babbit's residence from Friday 25 February 83 until the present date (27 February 83). While she was at BABBIT'S residence she observed a plastic bag with white powder in it, which she believed to be cocaine. She was offered this white powder to use by BABBIT, however refused.

3. Cpl. DELP also related to the affiant on 28 Feb. 83, that Ms. COON further related to him that while she was at BABBIT's residence (21–27 Feb. 83) she observed people coming to the residence, for what appeared to her, as buying drugs from BABBIT.

4. Robert Harry *WEIDENMOYER*, W–M–33, DOB—5/31/49, is known to the Penna. State Police as being a member of the War–Locks Motorcycle Gang. The affiant checked the files at PSP Limerick and learned that WEIDENMOYER had been arrested five (5) times for various charges including assault, robbery, trespass and uniform firearms act.

5. On 1 March 83, the affiant checked with a confidential informant, in reference to the activities of WEIDENMOY-ER. This informant has supplied information to the affiant in the past and has proved this information to be true and reliable. This informant has provided the Affiant with information which has led to the arrest and conviction of at least two (2) persons in Montgomery County for drug violations. Both arrests were made for possession and possession with the intent to deliver meth-

6

amphetamine. This informant related to the affiant that he/she has known the subject WEIDENMOYER for over one (1) year and during that period of time has known the subject to sell methamphetamine and use cocaine. Approximately six (6) months prior to this date the informant observed the subject WEIDENMOYER with methamphetamine in his possession. The informant further related that WEIDENMOYER has no steady type of employment and to the best of the informant's knowledge his (WEIDENMOYER) sole source of income is selling drugs. The informant has not had personal contact with WEIDENMOYER within the past three or four (4) months, however, he/she has heard through other individuals that WEIDENMOYER is still selling methamphetamine.

6. On 1 March 83, the affiant checked with Tpr. William DAVIS, PSP Motorcycle Club Intelligence Unit, concerning the activities of WEIDENMOYER. Tpr. DAVIS related that he received intelligence information concerning WEIDENMOYER approximately one (1) year ago and learned that he was selling methamphetamine. Tpr. DAVIS related that his information had WEIDENMOYER purchasing methamphetamine from Ronald "Ronnie" FOSTER, the National President of the Warlocks and that WEIDENMOYER was purchasing pound quantities.

7. On 1 March 83, the affiant further learned through Cpl. DELP that when he interviewed Ms. COON on 27 Feb. 83, Ms. Coon related that WEIDENMOYER has at least two (2) dogs, one (1) is a doberman and both are vicious. Ms. COON also related that BABBIT talked about a large amount of guns which he has somewhere.

8. The affiant feels that narcotic violations are being committed at the WEIDENMOYER residence and request that a search warrant be issued for the premises. Ms. COON was present inside the WEIDENMOYER residence between 25–27 Feb. 83 and observed drugs. A check with a reliable informant revealed that WEIDENMOYER is still involved in selling drugs. PSP Limerick has WEIDENMOYER'S last known address as 439 Main

Street, Trappe, Penna. The affiant feels that probable cause has been established for a search warrant for the WEIDENMOYER residence.

The affiant was presented to District Justice Bernard Maher who found that probable cause existed. He issued a warrant to search the named premises. That same day, Troopers Thomas M. Bowman and George Painter went to 439 Main Street to execute the warrant. After knocking, they were met by appellee Carter who indicated that Weidenmoyer was not in the house. The officers identified themselves, handed Carter the warrant, and proceeded to search the premises. Thereupon police discovered contraband believed to be controlled substances and placed Carter under arrest. Weidenmoyer surrendered to police three days later.

A suppression hearing was held before Judge Anita B. Brody on August 25–26, 1983, to determine the admissibility of the evidence seized pursuant to the warrant. The judge held that the magistrate had a substantial basis for concluding that there was a fair probability that contraband would be found on the searched premises. The evidence was admitted at trial, and both defendants were found guilty of two counts of possession of a controlled substance, two counts of possession with intent to deliver, and criminal conspiracy. Post-trial motions were denied.

On appeal to the Superior Court, the judgments of sentence of each defendant were reversed. The court held that "the affidavit of probable cause was either too remote in time or bore no relevance to establishing probable cause to search [appellees'] home for controlled substances." In addition, the three-judge panel found that the statements of the informant, Hazel Maxine Coon, were not supported by adequate facts. *Commonwealth v. Carter*, Nos. 831–832 Phil.1984 (Pa.Super. filed Sept. 6, 1985). Judge Montemuro filed a dissenting memorandum.

Since the Superior Court decision, this Court has held that the standard for analyzing probable cause under the Pennsylvania Constitution for a search warrant based upon an

informant's statements to police is the "totality of the circumstances" standard as announced by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We thus broadened the more rigid two-prong test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985).[4] This new test can be stated as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed." *Jones v. United States*, [362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)].

*Commonwealth v. Gray*, 509 Pa. at 484, 503 A.2d at 925, quoting *Illinois v. Gates*, 462 U.S. at 238–239, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. Regardless of which test is employed, it is clear that the affidavit submitted by Trooper Weniger justified the issuing authority in issuing the warrant to search 439 Main Street. The sentences should not have been reversed.

 The propriety of the grant of a search warrant to an affiant must be judged solely upon the information before the district justice at the time of its issuance. *Commonwealth v. Jones*, 506 Pa. 262, 484 A.2d 1383 (1984); *Commonwealth v. Stamps*, 493 Pa. 530, 427 A.2d 141 (1981); *Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582 (1975), *cert. denied*, 423 U.S. 999, 96 S.Ct. 432, 46

4. We also held that the "totality of the circumstances" standard should apply to all pending cases which have not yet finally been determined. *Id.* 509 Pa. at 478, 503 A.2d at 922. Therefore, the fact that the warrant in this case was issued prior to our decision in *Gray* is of no moment.

L.Ed.2d 376. The fact that the search resulted in the seizure of contraband is not relevant to our inquiry. Moreover, we note that the determination of the issuing authority should be given great deference. *Illinois v. Gates, supra; Commonwealth v. Jones, supra; Commonwealth v. Stamps, supra; Commonwealth v. Tolbert,* 492 Pa. 576, 424 A.2d 1342 (1981); *Commonwealth v. McCants,* 450 Pa. 245, 299 A.2d 283 (1973). Therefore, we must examine the affidavit prepared by Trooper Weniger as the district justice did to determine whether the warrant is founded upon probable cause.

The affidavit here presented provides three critical sources of information. The principal source was Hazel Maxine Coon, an identified informant. Ms. Coon had been staying at "Babbit's" residence at 439 Main Street with another man from February 25 to 27, 1983. During that time, she observed a plastic bag containing white powder which she believed to be cocaine. Weidenmoyer offered her its use, but she declined. She also observed people coming to the residence for what appeared to her to be drug transactions with "Babbit." She related this information to Corporal Gregory Delp, who in turn told Trooper Weniger, the affiant.

Appellees challenge this portion of the affidavit by arguing that neither the reliability and veracity nor the basis of knowledge of the informant were discernable from the document. We cannot agree.

It may be fairly stated that where an informant is not a paid, unknown tipster but instead an identified eyewitness to a crime who voluntarily reports his observations to the police, the trustworthiness of such a person may be presumed. *See Commonwealth v. Reel,* 499 Pa. 381, 453 A.2d 923 (1982); *Commonwealth v. Sudler,* 496 Pa. 295, 436 A.2d 1376 (1981); *Commonwealth v. Stokes,* 480 Pa. 38, 389 A.2d 74 (1978); *United States v. Rollins,* 522 F.2d 160 (2d Cir.1975); *United States v. Burke,* 517 F.2d 377 (2d Cir.1975); *United States v. Simmons,* 444 F.Supp. 500 (E.D.Pa.1978); LaFave, *Search and Seizure,* § 3.4 (1978).

The reason for such a presumption is well-articulated by the Supreme Court of Wisconsin in *State v. Paszek*, 50 Wis.2d 619, 184 N.W.2d 836 (1971).

> [A]n ordinary citizen who reports a crime which has been committed in his presence, or that a crime is being or will be committed, stands on much different ground than a police informer. He is a witness to criminal activity who acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety. He does not expect any gain or concession in exchange for his information. An informer of this type usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied.

Thus we reject appellees' contention that we must find Ms. Coon unreliable simply because her veracity and reliability are untested.

We further find that the truthfulness of Ms. Coon's statement is substantiated by the additional sources identified in the affidavit. Initially, we note that the reliability of an informant may be established by the corroboration of another source, such as an additional informant. *Commonwealth v. Jones, supra; Commonwealth v. Reel, supra; Commonwealth v. Sudler*, 496 Pa. 295, 436 A.2d 1376 (1981); *Commonwealth v. Edwards*, 493 Pa. 281, 426 A.2d 550 (1981); *Commonwealth v. Mamon*, 449 Pa. 249, 297 A.2d 471 (1972). Although probable cause cannot as a general rule be founded upon stale or temporally remote information, *Commonwealth v. Stamps, supra; Commonwealth v. Tolbert, supra; Commonwealth v. Jackson, supra; Commonwealth v. Eazer*, 455 Pa. 320, 312 A.2d 398 (1973); *Commonwealth v. Simmons*, 450 Pa. 624, 301 A.2d 819 (1973); *Commonwealth v. Shaw*, 444 Pa. 110, 281 A.2d 897 (1971); corroborative information need not be current for it to be properly considered by the magistrate so long as it relates to prior conduct sufficiently similar to the acts in question. *Commonwealth v. Gullett*, 459 Pa. 431, 329 A.2d 513 (1974). In fact, evidence of criminal activity at some

prior time may support a finding of probable cause as to the date of the warrant if it is shown that the criminal activity continued up to or about that time. *See e.g., Commonwealth v. Tolbert, supra.* Without question, neither of these sources could, standing alone, support a finding of probable cause because of their remoteness in time to the search. Since they do tend to corroborate the tip provided by the named informant, however, they may be considered for that purpose.

The first corroborative statement, found in paragraph five, involved information provided by an anonymous informant known to the affiant to be reliable based upon prior tips which lead to the conviction of two persons in unrelated drug violations. This informant stated that he had known appellee Weidenmoyer for approximately one year, that six months prior to the search he had observed methamphetamine in Weidenmoyer's possession, and that, to the best of his knowledge, Weidenmoyer's sole income was from the sale of drugs. He further stated that he had not had contact with Weidenmoyer in three to four months but had heard from others that Weidenmoyer was still selling methamphetamine. Though this information is obviously stale, *see Commonwealth v. Jackson, supra* (information from five months before issuance of warrant too remote), it tends to corroborate the statements of Ms. Coon and may itself become viable in light of Ms. Coon's indication of ongoing criminal activity.

Appellees challenge this source on another ground. They contend that they have the right to test the reliability of these statements by an examination of the previous convictions, citing *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973), and thus demand access to this information, or, in the alternative, the elimination of this unknown informant's statements from consideration. At the suppression hearing Trooper Weniger, fearful of the safety of his informant should his identity become known, refused to reveal the names of the prior cases, reasoning that if the case names were known, Weidenmoyer could figure out the informant's identity. In *Commonwealth v. Miller*, 513 Pa.

118, 518 A.2d 1187 (1986), we rejected the argument that disclosure was required in such a situation, and we affirm that position here.[5]

■ The second source of corroboration was an investigation done by the affiant following his contact with Ms. Coon. The investigation revealed that Weidenmoyer had been arrested five times for charges including assault, robbery, trespass, and violation of the Uniform Firearms Act. Because these charges are not related substantively to the present charges, they may not properly be considered. *See Commonwealth v. Gullett, supra.* However, the presence of some improper information in the affidavit is not enough to invalidate the search warrant if the warrant is also based upon other competent sources and is sufficient to constitute probable cause. *Commonwealth v. Gullett, supra; Commonwealth v. Thomas,* 444 Pa. 436, 437, 282 A.2d 693 (1971). The investigation also revealed that Weidenmoyer had purchased methamphetamine in pound quantities from the national president of the Warlocks motorcycle gang one year prior to the search. This information was provided by Trooper William Davis of the State Police Motorcycle Club Intelligence Unit. The veracity of this source is evident.[6] The fact that this information is stale does not lessen its corroborative value.

Having thus determined Ms. Coon to be a reliable informant, a strong showing as to her basis of knowledge would

5. In *Miller,* we held that because the names of persons anonymously referred to in an affidavit as being previously arrested on the strength of "tips" from the informant would reasonably lead to the informant's identity, disclosure was not required. Nor was the evidence seized excludable where the affidavit was otherwise sufficient on its face and no showing was made as to any material misrepresentation. We limited *Hall* to those situations where disclosure would not jeopardize the safety of a nongovernmental informant. *Commonwealth v. Miller,* 513 Pa. at 133, 518 A.2d at 1195. Here members of the Warlocks had already threatened reprisals against Ms. Coon, according to Trooper Weniger, and it was for this reason that he refused to disclose the requested information, even *in camera.*

6. In *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the United States Supreme Court stated that "[o]bservations of fellow officers of the government engaged in a common investigation are plainly a reliable basis for a warrant applied for by

not be necessary for us to find that, given the totality of the circumstances, police had probable cause to search the premises where appellees resided. *See Illinois v. Gates,* 462 U.S. at 233, 103 S.Ct. at 2329, 76 L.Ed.2d at 545. Ms. Coon told Corporal Delp that she had personally observed the white powder contained in the affidavit. She had also been an eyewitness to the transactions between Weidenmoyer and unidentified "people coming to the residence." The basis for her information is obvious, she was a witness to the criminal activity.

Appellees, however, do not question what this informant saw, but instead contend that she lacked the expertise to categorically state that Weidenmoyer possessed and sold controlled substances. What appellees seem to forget is that in our analysis we deal only with probabilities, not absolutes.[7] "Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity." *Commonwealth v. Jones, supra.* See also, *Common-*

---

one of their number." Following *Ventresca,* courts have consistently held that another law enforcement officer is a reliable source. *See* LaFave, Search and Seizure, § 3.5(a) (1978).

We note also Mr. Chief Justice Burger's plurality opinion in *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723, 733 (1971) wherein he wrote:

> We cannot conclude that a policeman's knowledge of a suspect's reputation—something that policemen frequently know and a factor that impressed such a "legal technician" as Mr. Justice Frankfurter—is not a "practical consideration of everyday life" upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that *Spinelli* prohibits the use of such probative information, it has no support in our prior cases, logic or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation.

7. As the United States Supreme Court said in *Illinois v. Gates:*

> As early as *Locke v. United States,* 7 Cranch 339, 348, 3 L Ed 364 (1813), Chief Justice Marshall observed, in a closely related context: "[T]he term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation.... It imports a seizure made under circumstances which warrant suspicion." More recently, we said that "the quanta ... of proof" appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar,* 338 U.S. 160, 173, 93 L Ed 1879, 69 S Ct 1302. Finely tuned standards such as proof beyond a

*wealth v. Reel, supra; Commonwealth v. Tolbert, supra; Commonwealth v. Mamon, supra; Commonwealth v. Marino,* 435 Pa. 245, 255 A.2d 911 (1969), *cert. denied,* 397 U.S. 1077, 90 S.Ct. 1526, 25 L.Ed.2d 811. The affidavit alleges no special expertise of Ms. Coon, and we presume none. However, as a layman she could reasonably conclude that the bag with which she was presented more likely than not contained a controlled substance, and that the transactions she observed between Weidenmoyer and others more likely than not involved the sale of illegal drugs. The district justice could therefore properly conclude that the probability of criminal activity was presented.[8]

Without a doubt, the trafficking of illegal drugs is a vexing problem. Law enforcement officials, burdened with the responsibility of enforcing our Commonwealth's drug laws, must not be bound so tightly as to become completely ineffective against violations of these laws. Yet police cannot be permitted to invade the security of the home without cause. It is precisely because of the tension between these oftentimes competing interests that the probable cause requirement was created. We believe our decision has recognized each interest at the expense of neither.

For the reasons expressed herein, we reverse the judgment of the Superior Court and reinstate the sentences of each defendant.

FLAHERTY, J., files a concurring opinion in which ZAPPALA, J., joins.

> reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Spinelli,* 393 US, at 419, 21 L Ed 2d 637, 89 S Ct 584. See Model Code of Pre–Arraignment Procedure § 210.1(7) (Prop.Off.Draft 1972); 1 W. LaFave, Search and Seizure § 3.2(e) (1978).
> *Id.,* 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546.

**8.** Finding that Ms. Coon's information to police provided the requisite probable cause for issuance of the warrant, we do not address the basis of knowledge for the second and third sources.

ZAPPALA, J., files a concurring opinion.

STOUT, J., did not participate in the consideration or decision of this matter.

FLAHERTY, Justice, concurring.

I agree with the majority that there was probable cause to issue a search warrant based upon the information given to police by Ms. Coon. I disagree, however, as I did in *Commonwealth v. Miller*, 513 Pa. 118, 136–137, 518 A.2d 1187, 1196, (1986) that the Commonwealth may rely in part upon an unnamed police informer to establish probable cause, state that the informer has aided police in prior cases, but then refuse to disclose any of those cases. I would require disclosure of some but not all of the prior cases in which the informer has aided police.

ZAPPALA, J., joins this concurring opinion.

ZAPPALA, Justice.

I join in the Concurring Opinion authored by Mr. Justice Flaherty. I note, however, as I did in *Commonwealth v. Miller*, 513 Pa. 118, 518 A.2d 1187 (1986) that I would require disclosure of the names of *all* prior cases in which the state is basing probable cause so that the veracity of the informant can be effectively challenged.