**Commonwealth v. Hanslovan**

484

*Nathan L. Boob,* for Commonwealth.
*Roy K. Lisko,* for defendant.

KISTLER, *J.,* December 1, 2005—Presently before this court is Ronald Hanslovan's (defendant) motion to suppress regarding two search warrants issued to search his business. A hearing was held on November 8, 2005, to argue the legality of these warrants.

## FACTUAL BACKGROUND

On September 17, 2004, Renae Cauger went to Tanfastique, a tanning salon in State College, Pennsylvania. Tanfastique is owned and operated by defendant. While in tanning room no. 7, Ms. Cauger noticed a hole in the wall. The alleged hole made room no. 7 visible from defendant's office. Afterwards, Ms. Cauger notified two Tanfastique employees, Lauren Sturniolo and Alexis Penezic. These employees informed Ms. Cauger that defendant would often go into his office and lock the door. (N.T. at 26-27.) They also stated that employees always had to knock before entering defendant's office. Ms. Sturniolo later entered defendant's office on a day he was not working. (N.T. at 25-27.) She noticed a bulletin board covering the alleged peephole. (N.T. at 25-29.) She testified at the preliminary hearing

that she had her sister get into the tanning bed in room no. 7. (N.T. at 29.) Ms. Sturniolo further testified that the hole gave a clear view of a patron's genital area while the patron was in the tanning bed. (N.T. at 29.) Ms. Penezic also observed the bulletin board and alleged peephole. (N.T. at 31.) Ms. Penezic stated defendant's office contained a computer used for scheduling appointments.

On February 3, 2005, the State College Police served a search warrant on defendant at Tanfastique. The police then searched Tanfastique and seized defendant's computer and took photographs of the bulletin board and alleged peephole. The computer's hard drive was later "imaged" onto the police's computer, but no files were viewed. On March 8, 2005, after obtaining the second warrant, the State College Police viewed the contents of the hard drive for incriminating evidence. No such evidence was found on the hard drive.

Defendant argues the February search warrant was illegal because (1) it did not set forth sufficient probable cause to believe the item seized contained information subject to seizure, (2) the affidavit of probable cause did not supply underlying circumstances upon which the informants based their conclusions that the items sought were located in Tanfastique, (3) the warrant offered no probable cause to believe the informants were reliable, (4) the affidavit is misleading in that it does not set forth that Ms. Cauger was in the tanning booth in September 2004, yet she did not apply for the warrant until February 2005, and (5) the warrant was issued for an improper purpose, namely "Enforcement action to deter Hanslovan's ability to victimize other unsuspecting customers in necessary."

Defendant further argues the March search warrant was illegal because (1) it did not set forth sufficient probable cause to believe the item seized contained information subject to seizure, (2) the affidavit of probable cause did not supply underlying circumstances upon which the informants based their conclusions that the items sought were located in the computer, (3) the warrant offered no probable cause to believe the informants were reliable, and (4) the search warrant contained a material misstatement of fact in that it states Ms. Cauger did not return to the salon, when she actually returned 28 times after the incident.

## DISCUSSION

The Fourth Amendment of the United States Constitution "operates to protect privacy interests by prohibiting non-consensual searches without a warrant. Issuance of a warrant, in turn, requires probable cause." *Commonwealth v. Tobin,* 828 A.2d 415, 419 (Pa. Commw. 2003) (citing *Veronia School District 47J v. Acton,* 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)). A general search warrant permits law enforcement officials to "search for the fruits or instrumentalities of a crime, is issued by a court and is attendant to suspected criminal activity." *Id.* (citing *Camara v. Municipal Court of the City & County of San Francisco,* 387 U.S. 523, 87 S.Ct., 18 L.Ed.2d 930 (1967). "A magistrate is to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Jones,* 542 Pa. 418, 424, 668 A.2d 114,

116-17 (1995). "Under normal circumstances, the statement of a victim of a crime would be sufficient to create the probable cause necessary for the issuance of a search warrant." *Commonwealth v. Mamon,* 449 Pa. 249, 258, 297 A.2d 471, 477 (1972).

When a witness has personally observed a crime and voluntarily reports the observation, the trustworthiness of such a person may be presumed. *Commonwealth v. Weidenmoyer,* 518 Pa. 2, 9, 539 A.2d 1291, 1295 (1988).

A valid warrant authorizing the seizure of a personal computer also authorizes the reproduction of any documents stored within the computer. *Commonwealth v. McEnany,* 446 Pa. Super. 609, 621, 667 A.2d 1143, 1149 (1995); *Commonwealth v. Copenhefer,* 526 Pa. 555, 561, 587 A.2d 1353, 1356 (1991).

In the current case, this court believes the February search warrant was properly issued. First, there was sufficient probable cause set forth in the affidavit for this court to find the area contained items subject to seizure. Here, the police seized defendant's computer. The computer is used to operate his business. Specifically, the computer is used to operate the tanning beds, and to maintain customers' names and their account status. The computer also documents individual tanning sessions. This court believes the computer could give the police some insight as to whether defendant was scheduling certain women to tan in room no. 7. This information would not be attainable without seizing the information on the computer, as there is no evidence suggesting defendant kept hard copies of these records. It was possible the computer may also have contained voyeuristic computer images of photographs taken from defendant's

office to room no. 7 via the alleged peephole. As such, this court believes the computer is a fruit or instrumentality of the invasion of privacy charge.

Second, there was sufficient evidence from the informants to suggest the items sought were located in Tanfastique. The two Tanfastique employees consistently observed the computer in defendant's office. Defendant's office is located in Tanfastique. As such, the observation of the two employees is sufficient evidence to suggest the computer was at Tanfastique.

Third, this court believes the search warrant offers a sufficient indicia of reliability on behalf of the informants. Ms. Cauger personally viewed the alleged peephole. This information was later corroborated by the two Tanfastique employees. This court believes observations of the same alleged peephole by three different, and known, informants is sufficient to suggest their information is reliable.

Fourth, this court believes it is not essential that Ms. Cauger did not report the incident until February. A delay in reporting such an incident does not nullify the fact that Ms. Cauger and the two Tanfastique employees viewed an alleged peephole. The purpose of the search warrant was not to determine whether defendant was continuously viewing patrons in room no. 7; rather, it was intended to help the police gather information in order to build a case for invasion of privacy against defendant. The search warrant in the current case helped the police properly gain access to Tanfastique in order to corroborate the observations of Ms. Cauger and the two employees.

Finally, this court believes the warrant was issued for a proper purpose. For an invasion of privacy investiga-

tion, the police need to locate items aiding the suspect in spying on the victim or victims. The purpose in locating these items is to help build a case against the suspect. The overall goal is to prevent the suspect from invading subsequent persons' privacy. Here, access to the business could help the police determine the truthfulness of Ms. Cauger's claim by observing the alleged peephole, as well as gaining access to the computer to view defendant's scheduling records. This evidence could aid the Commonwealth in prosecuting defendant, and preventing him from spying on further patrons.

With respect to the March search warrant and affidavit, this court also finds it was properly issued. First, this court believes the affidavit contained sufficient information to subject the computer to seizure. This court addressed the issue earlier in this opinion. Defendant used the computer to manage customer accounts and schedule tanning sessions. The computer could have given the police some insight on whether defendant was scheduling certain women to tan in room no. 7. It was also possible the computer could have contained voyeuristic computer images. Access to the computer's contents could not be achieved without seizing the computer. As such, this court believes the computer is a fruit or instrumentality of the invasion of privacy charge.

Second, this court believes the computer was the appropriate location to find the desired information. As stated above, there is no evidence suggesting defendant kept hard copies of customer names or account status. Today's businesses are reliant on computers to keep and maintain data. As such, Tanfastique's computer is the logical place to find the desired information.

Third, this court believes the search warrant offers sufficient indicia of reliability on behalf of the informants. Ms. Cauger personally viewed the alleged peephole. This information was later corroborated by the observations of the two employees. This court believes observations of the same alleged peephole by three different, and known, informants is sufficient evidence to suggest the information is reliable.

Finally, this court believes the fact that Ms. Cauger denied returning to Tanfastique in the affidavit is an insufficient material omission to sour the search warrant as a whole. Whether Ms. Cauger returned to Tanfastique does not negate that there is an alleged peephole in defendant's office. This court believes this issue addresses Ms. Cauger's credibility as a witness, not whether defendant was spying on his patrons.

## ORDER

And now, December 1, 2005, defendant's motion to suppress regarding search warrant no. 2005-01653A and search warrant no. 2005–01653B is hereby denied.