J-A17020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVON GARNES | : | |
| | : | |
| Appellant | : | No. 2125 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 21, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001301-2021

BEFORE:  KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:　　　　　　**FILED NOVEMBER 13, 2025**

Devon Garnes ("Garnes") appeals from the judgment of sentence following his convictions for two counts of violating the Uniform Firearms Act ("VUFA"), and one count of recklessly endangering another person ("REAP").[1] Garnes claims the police lacked reasonable suspicion supporting a stop and/or probable cause to search after he summoned them while the police were en route to a 911 dispatch reporting a shooting on the 7900 block of Pickering Avenue, asked for their help, tried to lead them away from the direction of the shooting, and then fled.  Because Garnes summoned the officers to him, delaying their investigation of a reported shooting, and engaged in a course of conduct during their mere encounter that established reasonable suspicion,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 6106, 6108, 2705.

and because his challenge to the search is outside the scope of our review, we affirm the denial of suppression and the judgment of sentence.

We summarize the factual background of this appeal from the evidence at the suppression hearing.[2]  On March 13, 2020, at approximately 11:40 a.m., Philadelphia Police Officer Jeff Stauffer ("Officer Stauffer") and his partner were on patrol in a marked police car in full uniform when they received a police dispatch about a shooting at the 7900 block of Pickering Avenue in Philadelphia.  **See** N.T., 6/16/22, at 5-6; Suppression Exhibit C-1 ("Exhibit C-1") at 0:01-2:58; **see also** Trial Court Opinion, 10/27/22, unnumbered at 2.  The dispatch indicated that two black men, one wearing a blue coat, had fled from the scene.  **See** Trial Court Opinion, 10/27/22, unnumbered at 2.  Officer Stauffer, whose body camera was recording, drove toward the scene of the reported shooting.  Garnes, who was not wearing a blue jacket,[3] flagged them down approximately one-and-one-half blocks from the reported shooting scene.  **See** Exhibit C-1 at 0:01-2:58; **see also** N.T., 6/16/22, at 10 (indicating Officer Stauffer's testimony Garnes did not match the dispatcher's description of the shooter); Trial Court Opinion, 10/27/22, unnumbered at 2; Exhibit C-1 at 2:47-48 (noting Officer Stauffer told his partner Garnes was "flagging us down").  In response to Garnes's

_____

[2] **See In the Interest of L.J.**, 79 A.3d 1073, 1085 (Pa. 2013) (holding appellate scope of review of a suppression issue is limited to the suppression hearing record).

[3] The dispatcher indicated two shooters, so even though Garnes was not wearing a blue jacket, he was not thereby eliminated as a possible suspect.

gesticulations, Officer Stauffer stopped his vehicle and got out. Garnes approached Officer Stauffer and Garnes began speaking first. *See* Suppression Exhibit C-1 at 2:49-2:50.

Garnes walked up to the police car and said, "My friends, my friends. Listen." He then offered, "They w[ere] just shooting around the corner," and pointed to his left. Garnes then said, "Please," made a gesture that involved curling both arms toward himself, walked over to Officer Stauffer's partner while miming putting a backpack on his shoulders, and said, "I had a bookbag on me." *See id*. at 2:49-56; *see also* N.T., 6/16/22 at 7. Officer Stauffer asked Garnes whether he saw who was shooting and whether they were shooting at him. *See* Suppression Exhibit C-1 at 2:57-3:01. Garnes started to answer, "It was a guy," paused, told Officer Stauffer to "hold on," looked at his cellphone, then denied being a target, said he had run from the gunshots, and again pointed behind himself to indicate where the shooting occurred. *See id*. at 3:01-3:03. Garnes then asked the officers, "Can you all come here for a second, close the door [of the police car] and . . . come here?" *See id*. at 3:03-07. Then, inexplicably, Garnes began walking away from the officers, and in the opposite direction of where he just indicated the shooting occurred, and waved his hand in a gesture that told the officers to follow him. *See id*. at 3:06-3:11. Officer Stauffer remained motionless and repeatedly asked Garnes to "come here," as Garnes walked to the end of the block, made his backpack gesture, said something about insulin, turned the corner, and

then continued to walk away in the opposite direction of the shooting he had reported to the officers. *See id*. at 3:08-3:16.

Officer Stauffer followed Garnes around the corner, repeating his requests for Garnes to "come here" with greater insistence and telling his partner to get into the car. *See id*. at 3:15-3:21. Officer Stauffer stated, "Yo," and "come here" to Garnes repeatedly, and then walked in Garnes's direction. *See id*. at 3:15-21. The officer began to move more quickly; Garnes looked back at him, then sprinted across the street and into an alley. *See id*. at 3:22. Officer Stauffer pursued Garnes on foot for approximately two blocks, and with the assistance of two officers in a backup car, tackled Garnes. *See id*. at 3:22-4:03.

While Garnes was on the ground, officers stated there was "something in his pocket" and to "check that pocket." *See id*. at 4:03-4:30. An officer appeared to reach into Garnes's pants pocket and retrieve an unidentified object. *See id*. at 4:15-4:17. After handcuffing Garnes, officers began picking him up to bring him to a seated position. *See id*. at 4:34. During this process, an officer grabbed and lifted Garnes's shirt. *See id*. 4:34-4:36. An officer stated, "He's got a gun," *see id*. at 4:37, and the officer who was lifting Garnes's sweatshirt reached down, recovered the gun, and passed it to other officers. *See id*. at 4:37-4:42. Garnes then said, "I only ran because the cell [sic] said that. I have a gun." *See id*. at 4:50-5:00.

The Commonwealth charged Garnes with two counts of VUFA and one count of REAP related to the shooting on Pickering Avenue.[4]  Garnes filed a motion in which he checked boxes asserting challenges to the legality of his detention and the search of his person.[5]  At the suppression hearing, Garnes argued Officer Stauffer lacked reasonable suspicion to detain him and did not have probable cause to arrest and search him.  *See* N.T., 6/16/22, at 3-4, 11, 14.  The Commonwealth presented testimony from Officer Stauffer and played the recording from his body camera.  *See id*. at 4-10.  Officer Stauffer testified Garnes began backing away from him as he was asking about the shooting and believed Garnes was attempting to flee from his investigation.  *See id*. at 7, 9.[6]  Officer Stauffer also testified that, following the pursuit, officers recovered the gun in Garnes's front waistband.  *See id*. at 8.

The trial court and Garnes's counsel discussed whether Officer Stauffer had reasonable suspicion to detain then chase Garnes.  *See* N.T., 6/16/22, at 11-16.  The trial court thereafter denied Garnes's suppression motion.  *See id*. at 16-17.  The court noted that Garnes acted evasively after waving down

---

[4] Garnes later admitted to being involved in the shooting.  *See* N.T., 6/16/22, at 23-24.

[5] Garnes checked boxes indicating that he was arrested without probable cause, subject to a stop and frisk on less than reasonable suspicion, arrested without a lawfully issued warrant or other justification, and searched without probable cause and without a warrant.  *See* Omnibus Motion, 7/26/21, at 1.

[6] We note that Officer Stauffer did not testify that he believed Garnes was or had been involved in criminal activity.  Rather, the officer testified only that he believed Garnes was attempting to flee from his investigation.  *See* N.T., 6/16/22, at 7, 9.

the police and his requests for assistance were ploys in anticipation of his flight from an investigation into the shooting and/or to thwart or at least delay the investigation. *See* N.T., 6/16/22, at 12-17. Garnes proceeded to a non-jury trial, and the court found him guilty of all offenses. *See id*. at 18-33.

On July 21, 2022, the trial court sentenced Garnes to an aggregate term of three years of probation. Garnes timely appealed, and the trial court concluded reasonable suspicion existed to detain Garnes because he could have been a perpetrator, victim, or witness to a shooting. *See* Trial Court Opinion, 10/27/22, unnumbered at 6-7. Additionally, the trial court determined officers observed and recovered the gun from Garnes's waistband without an "invasion of [Garnes's] clothing or cavity . . .." *See id*. at 7. This Court affirmed. *See Commonwealth v. Garnes*, 311 A.3d 564 (Pa. Super. 2023) (unpublished memorandum).

The Supreme Court granted allowance of appeal and remanded to this Court for reconsideration in light of its unanimous decision in *Commonwealth v. Jackson*, 302 A.3d 737 (Pa. 2023) (order per curiam), that investigative detentions are limited to cases where the totality of the circumstances demonstrates a "particularized and objective basis for an officer reasonably to suspect the individual detained was, or was about to be, engaged in criminal activity, and are not available solely to identify victims of, or witnesses to, criminal acts." *See* Order, 6/20/24 (citation and internal quotation marks omitted).

Garnes raises the following issue for review post-remand:

Where . . . Garnes flagged down police to report that he heard gunshots, which corroborated a recent radio call, and he did not match the shooter's description contained in the call, did not the police unlawfully stop and chase him after he walked away as they lacked reasonable suspicion he had committed a crime, and did they not lack probable cause to search him after tackling him?

Garnes's Supplemental Brief at 1.

Garnes's issue implicates the denial of his motion to suppress. When reviewing an order denying a motion to suppress evidence,

[o]ur standard of review . . . is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Gindraw*, 297 A.3d 848, 851 (Pa. Super. 2023) (internal citation and brackets omitted).

Garnes's issue consists of two sub-parts: first, Officer Stauffer lacked reasonable suspicion to stop and chase him; second, officers improperly searched his clothing and recovered the gun. We address these claims separately.

The Commonwealth bears the burden at a suppression hearing of establishing the challenged evidence was not obtained in violation of the accused's rights. *See* Pa.R.Crim.P. 581(H). The credibility of witnesses and

- 7 -

the weight to be accorded their testimony is solely within the province of the suppression court. *See Commonwealth v. Dutrieville*, 932 A.2d 240, 242 (Pa. Super. 2007). Although a reviewing court is bound by a suppression court's findings of fact if they are supported in the record, it conducts plenary review to determine if the court properly applied the law to the facts. *See Commonwealth v. Dunkins*, 263 A.3d 247, 252 (Pa. 2021); *Commonwealth v. Dales*, 820 A.2d 807, 812 (Pa. Super. 2003). This Court may reverse if the suppression court drew erroneous legal conclusions from the evidence. *See Dunkins*, 263 A.3d 252.

"Police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. If a defendant's detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention." *Commonwealth v. Cunningham*, 287 A.3d 1, 7 (Pa. Super. 2022) (internal citation and quotations omitted), *appeal denied*, 302 A.3d 626 (Pa. 2023)

There is no dispute in this case that the police interaction with Garnes began as a mere encounter, which requires no quantum of suspicion; Garnes instead argues the situation escalated into an investigative detention when police told him to stop as he walked away from them. An investigative detention may be undertaken where police possess reasonable suspicion of a person's involvement in a crime, the detention is temporary, and does not

possess the coercive conditions of a formal arrest. *See Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023) (citation omitted).

In reviewing whether reasonable suspicion to support an investigative detention exists, this Court examines the totality of the circumstances to determine if there exists "a particularized and objective basis for suspecting an individual of criminal activity." *Commonwealth v. Knupp*, 290 A.3d 759, 767 (Pa. Super. 2023) (citation and brackets omitted). To establish reasonable suspicion, an officer "must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot." *Commonwealth v. Garcia*, 311 A.3d 1138, 1145 (Pa. Super. 2024) (citation omitted); *see also Alabama v. White*, 496 U.S. 325, 329 (1990) (quoting *Terry v. Ohio,* 392 U.S. 1, 22 (1968) (stating a police officer has reasonable suspicion when he is "able to articulate something more than an 'inchoate and unparticularized suspicion or hunch'" that criminal activity is afoot)); *accord Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa. Super. 2006).

Although reasonable suspicion requires something more than an observation of a person doing something many people can do legally, *see Garcia*, 311 A.3d at 1145, the likelihood of criminal activity sufficient to establish reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S.

266, 274 (2002). Even a combination of innocent facts, when taken together, may warrant further investigation by the police officer. ***See Commonwealth v. Harris***, 176 A.3d 1009, 1021 (Pa. Super. 2019); ***see also Arvizu***, 534 U.S. at 277 (stating that reasonable suspicion "need not rule out the possibility of innocent conduct"); ***Garcia***, 311 A.3d at 1145 (stating "[w]ithout any possibility of innocence, there would be nothing for the officer to investigate"). A court assessing reasonable suspicion considers the totality of the circumstances giving due weight to the specific reasonable inferences the police officer is entitled to draw from the facts considering his experience. ***See Harris***, 176 A.3d at 1021.

Garnes asserts Officer Stauffer lacked reasonable suspicion to detain him when he first ordered him to "come here" as he began walking away from the officers, which occurred well into their interaction. ***See*** Garnes's Supplemental Brief at 5-8. He states he did not match the description of one of the shooters,[7] but contends his action of flagging down the officers and asking them to accompany him dispelled any suspicion he was involved in criminal activity. ***See id***. Garnes contends he exercised his constitutional right to walk away from Officer Stauffer after the officers declined his request to accompany him. ***See id***. at 8. Garnes claims the trial court abused its discretion by finding Officer Stauffer pursued him only after he ran from the

_____

[7] As indicated *supra*, the 911 dispatch reported that there were two shooters so Garnes was not precluded as a possible suspect.

officer; he asserts he ran only after seeing Officer Stauffer "charging" at him. Garnes's Supplemental Brief at 9.

Following the Supreme Court's remand for reconsideration in light of **Jackson**, we affirm the trial court's denial of suppression, although we do so on grounds other than those the trial court cited.[8]  The interaction between Officer Stauffer and Garnes undisputedly began as a mere encounter that Garnes actually initiated, but ripened into reasonable suspicion based on Garnes's words and behavior during the encounter.

The record, which includes Officer Stauffer's body-worn camera video, clearly shows Garnes stopped Officer Stauffer and his partner while they were en route to the scene of a police dispatch they received three minutes before concerning a shooting approximately one-and-a-half blocks from where Garnes stopped them.  Without prompting from the officers, Garnes walked up to their patrol car and relayed to the officers there had been a shooting, then pointed to his left to show the direction where it happened, which was in the direction where the officers were heading before Garnes stopped them. Garnes next walked over to Officer Stauffer's partner and asked for help retrieving his backpack.  When Officer Stauffer asked him about the shooting, Garnes began to answer the question, then told the officer to "hang on,"

_____

[8] This Court may affirm a trial court on any proper basis, whether or not the trial court cited that basis for its ruling.  **See Commonwealth v. Lehman**, 275 A.3d 513, 520 n.5 (Pa. Super. 2022).

- 11 -

looked at his cellphone, and again pointed behind him to show where he had run from the shooting. Garnes then asked the officers, "Can you all come here for a second, close the door [of the police car] and come here?" **See id**. at 303-07. After Garnes's request to do this and the officer's capitulation to this request, Garnes immediately began walking away from the officers, in the opposite direction from where he said the shooting happened, mumbling something that was unclear except for a reference to insulin. **See id**. at 3:06-3:09. Garnes then turned away from the officers gesturing for them to follow him but then repeatedly ignored the direction to "stop" or "come here," quickening his pace and fleeing upon Officer Stauffer's pursuit.

The totality of the circumstances provided reasonable suspicion of criminal activity on Garnes's part, at the very least as an accessory to the crime or as possibly interfering with a criminal investigation. The facts show that Garnes's words and actions delayed the police response to a shooting nearby; a shooting of which he was aware. A commonsense assessment of these facts shows Garnes's knowledge about the shooting and his attempt to delay the officers' investigation. Further, when asked to identify the shooter, Garnes began to answer the question, looked at his phone, and promptly changed the subject. Unlike Jackson's, Garnes's flight was not from the actual shooting, but specifically from the officers that **he** had flagged down and

whose help *he* had solicited.[9]  While Garnes's behavior of flagging down the officers, which prevented them from reaching the crime scene as soon as possible, his refusal to answer a direct question put to him about the shooting after he indicated he was aware of the shooting, then asking the police to close their car doors, and follow him in the opposite direction from the shooting may have had an innocent explanation, that possibility does not defeat reasonable suspicion.[10]    *See Garcia*, 311 A.3d at 1145; *Commonwealth v. Harris*, 176 A.3d 1009, 1021 (Pa. Super. 2019).

_____

[9]  In *Jackson*, the Supreme Court rejected the argument a person may be lawfully detained based solely on suspicion they were a victim or a witness of a crime.  The record facts elicited that at the time the police commanded Jackson to stop, he had done nothing more than flee from the scene of gunshots. Jackson told them that was what he was doing.  *See Jackson*, 302 A.3d 737, 738.  Here, by contrast, Garnes himself initiated a mere encounter with police while they were en route to the scene of the reported shooting, during which he indicated where the shooting happened, asked them for help retrieving a backpack in the opposite direction, delayed the police by declining to answer a question about the shooting after Garnes had indicated knowledge of the shooting, asked the officers to close the door of their patrol car and come to him, and then inexplicably began walking in the opposite direction from the shooting.  Plainly the factual scenario this case of a suspect-initiated mere encounter that developed into probable cause is factually distinguishable from the immediate investigative detention that occurred in *Jackson*.

[10] *Commonwealth v. Weidenmoyer*, 539 A.2d 1291 (Pa. 1988), does not support Garnes's assertion that his act of stopping the police dispelled, rather than raised, suspicion.  *See* Garnes's Supplemental Brief at 8.  That case holds only that where an unpaid tipster reports observations to police, his trustworthiness may be presumed.  *See id*. at 1295.  Nothing in the record indicates Garnes was a "tipster".  He declined to identify the shooter, asked the police to stop their attempt to investigate a shooting that had just occurred, then ran when they did not accompany him in the opposite direction of the shooting.

The totality of the circumstances provided a reasonable basis to believe Garnes was not an innocent bystander; rather a commonsense analysis of the totality of the record facts permits police to conduct a temporary detention to investigate Garnes's connection to the shooting to which the officers were responding. **See Arvizu**, 534 U.S. at 274, 277; **Garcia**, 311 A.3d at 1145; **Harris**, 176 A.3d at 1021.[11] At the very least, the initial mere encounter after Garnes waived the officers down certainly ripened into reasonable suspicion when the circumstances showed the officers that Garnes was attempting to delay their arrival at a possible homicide scene by speaking incoherently and trying to physically have them proceed in the opposite direction. After this initial interaction, it became clear Garnes was likely not an innocent bystander fleeing the shooting and more likely was involved in a crime that was "afoot." **See Commonwealth v. Lewis**, --- A.3d ---, 2025 WL 2724795 (Pa., September 25, 2025); **Commonwealth v. Mackey**, 177 A.3d 221, 230 (Pa. Super. 2017).

Garnes's subsequent headlong flight from the officer, even if the officer briefly "charged" at him, occurred **after** there was a reasonable basis to order

---

[11] Because Officer Stauffer had a reasonable basis to stop and detain Garnes, we need not determine whether Garnes's walk became a run only after the officer pursued him. Moreover, an officer's direction to a person to "come here," unaccompanied by force or threat, does not convert a mere encounter into an investigative detention. **See Commonwealth v. Rice**, 304 A.3d 1255, 1262 (Pa. Super. 2023); **Commonwealth v. Newsom**, 170 A.3d 1151, 1156 (Pa. Super. 2017).

Garnes to stop and briefly detain him. Garnes's decision to sprint away from the officer only added to the facts and circumstances justifying the officer's pursuit of Garnes. Thus, Garnes's first claim merits no relief.

Next, Garnes asserts that officers improperly searched his clothing and recovered the gun. Garnes's issue is beyond the scope of the remand, which was expressly limited to the existence of reasonable suspicion. *See* Order 6/20/24. *See Commonwealth v. McCullough*, 230 A.3d 1146, 1164 n.9 (Pa. Super. 2020) (recognizing that where a case is remanded for a specific, limited purpose, a court may not decide issues not encompassed in the remand); *Commonwealth v. Lawson*, 789 A.2d 252, 253 (Pa. Super. 2001) (stating that "where a case is remanded to resolve a limited issue, only matters related to the issue on remand may be appealed.") (citation omitted).

For the foregoing reasons, we affirm the denial of suppression and the judgment of sentence.

Judgment of sentence affirmed.

Judge King joins in this decision.

Senior Judge Pellegrini did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/13/2025</u>