J-S32025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RASSAN SHAHEED HOSKINS | : | |
| | : | |
| Appellant | : | No. 8 MDA 2025 |

Appeal from the Judgment of Sentence Entered November 27, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0001138-2022

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED DECEMBER 30, 2025**

Rassan Hoskins appeals from the judgment of sentence entered after he was convicted of drug crimes.[1] He challenges the denial of two pretrial motions: a motion to suppress evidence based on a search warrant, and a motion for a pretrial writ of habeas corpus. We affirm.

On March 28, 2022, Officers Carlos Muniz and Daniel Duffy of the Wilkes-Barre Police Department charged Hoskins with possessory offenses based on contraband recovered in a warranted search of an apartment. The relevant charges were held for court following a preliminary hearing on April 12, 2022.

---

[*] Former Justice specially assigned to the Superior Court.

[1] The jury found Hoskins guilty of possession with intent to deliver, possession, and four counts of drug paraphernalia. 35 P.S. § 780-113(a)(30), (16), and (32). The trial court found Hoskins guilty of possession of a small amount of marijuana for personal use. *Id.* § 780-113(a)(31)(i).

On August 4, 2022, Hoskins filed an omnibus pre-trial motion, including a motion to suppress evidence and a motion for a writ of habeas corpus. The trial court heard the motions on October 11, 2022. The Commonwealth presented the testimony of Officer Duffy and introduced copies of the search warrant into evidence.[2]

The affidavit of probable cause attached to the search warrant included two pages. The first detailed Officer Duffy's training and experience with drug investigations. The second page provided specific facts of the case, which we reproduce verbatim:

> Monday 3/28/22 at about 1751 hrs. Luzerne County Communications Center sent police officers to an open 911 line of a possible domestic where a female was saying she could not breathe. 911 provided coordinates. Officers responded to the area and the address ended up being 101 Old River Road that is a two-story apartment building.
>
> Officers Duffy and Muniz responded, along with Officer Balchun. Officer Duffy saw a male with a green jacket on the stairs and the sound of a female crying inside of the common hallway. Duffy knocked on the door and the male went into the 1st floor apartment and the woman came outside.
>
> The woman was the caller, and she had visible bruising on her neck. She said she was choked by the male and that he was RASSAN HOSKINS and he would not allow her to leave. Officer Muniz had heard the crying woman inside of the hallway saying "please let me leave" prior to her coming outside. The woman reported that HOSKINS said he would kill her. She told Duffy that she was there because she owed him money.
>
> Officer Duffy confirmed that HOSKINS was wanted out of Luzerne County. As Duffy started to apply for a search warrant with the

---

[2] There were two search warrants in this case. The attached affidavits are substantively identical, and we refer to the first warrant for simplicity.

intention to arrest HOSKINS on the warrant, he ended up coming outside and was taken into custody by Officers Muniz and Balchun. Officer Duffy told HOSKINS he was working on the search warrant and probably did not want Duffy inside looking around where HOSKINS blurted out "Yeah, I smoke a lot of weed"

Officer Muniz and Duffy both smelled marijuana about the door area where he had come outside of the apartment. HOSKINS was taken to the LCCF on the warrant. Officers Duffy and Muniz stood by on scene, and learned from the woman that there was reportedly a clear sandwich bag of fentanyl and a scale inside of the apartment that HOSKINS was inside. Duffy found a necklace in the common hallway that was broken and belonged to the woman. The woman reported that her credit card was stolen at the time of the incident as well. The credit card was not located on HOSKINS person when he was arrested out front of the address.

The officers were also informed that there was no one else inside of the apartment and had witnesses [to] the mentioned contraband about ten minutes before 911 was called.

Officers Duffy and Muniz remained on scene to make sure that no one else was coming or going inside of the apartment. The apartment is 101 Old River Road 1st floor apartment where the entrance is on the right as you enter the front through the front main hallway door.

HOSKINS has a history of being involved with illegal drugs. Officer Duffy noted a white build up next to his right nostril consistent with snorting of controlled substances. Officers were provided information that HOSKINS snorts Percocet's (schedule II controlled substance).

Officer Duffy spoke with Attorney Brian Coleman of the Luzerne County District Attorney's Office who authorized him to apply for this search warrant.

Search Warrant, 3/28/22, at 3.

Officer Duffy testified consistently with the affidavit. He noted that his observation of "residual buildup" in Hoskins' nostril corroborated what the female victim in the apartment, Amanda Longfoot, told him about Hoskins

- 3 -

snorting Percocet. "And I had no reason to doubt what she was telling me, given all of the circumstances." N.T., 10/11/22, at 15. Officer Duffy reiterated that although he had never dealt with Longfoot before, he found her "creditable" based on how everything "seemed to be falling into place"— Longfoot's neck, Hoskins' nostril, and Longfoot's demeanor. *Id.* at 19–20.

Hoskins' counsel asked Officer Duffy if he had checked for any warrants or criminal history for Longfoot. Officer Duffy did not remember. Counsel also asked whether this incident was the first time Officer Duffy had seen Hoskins; Officer Duffy did not remember.

> A.     I could have sworn that I dealt with him previously. It was the first time that I saw him physically at that moment. You know what I mean? Yeah. For some reason I remember him for something and I don't know what.
>
> Q.     So you don't recall if you had any prior contact with him?
>
> A.     No.

N.T., 10/11/22, at 54–55.

Hoskins and the Commonwealth filed briefs. On November 18, 2022, the trial court denied Hoskins' motion to suppress evidence and denied Hoskins' motion for a writ of habeas corpus in part.

The case proceeded to trial from September 30 to October 2, 2024. Hoskins was convicted of the above counts. On November 27, 2024, the trial court sentenced Hoskins to an aggregate term of 56 to 120 months of incarceration, a $50.00 fine, and costs.

Hoskins timely appealed. Hoskins and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Hoskins presents two issues for review:

I.    Whether there was probable cause to support the search warrant and whether [Hoskins'] Motion to Suppress should have been granted.

II.   Whether the Commonwealth failed to establish a Prima Facie case for the charges against [Hoskins] and whether his Petition for Writ of Habeas Corpus should have been granted.

Hoskins' Brief at 1.

In his first issue, Hoskins challenges the denial of his motion to suppress the fruits of the warranted search of the apartment. He argues that the Commonwealth did not prove the warrant was supported by probable cause, as Officer Duffy did not determine whether Longfoot had any arrest warrants, criminal history, or other bias. He contends that "it is reasonable to assume that she had motivation to lie" because she was upset at Hoskins for choking her and preventing her from leaving the apartment. Hoskins alleges additional defects in the affidavit clarified by Officer Duffy's testimony: Officer Duffy did not ask if Hoskins had a medical marijuana card, did not recall prior contact with Hoskins, and did not collect or test the powder on Hoskins' nostril.

We review pretrial suppression rulings to determine whether the record supports the trial court's factual findings and whether the trial court's legal conclusions are correct. *Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (citing *Commonwealth v. Freeman*, 150 A.3d 32, 34–35 (Pa.

Super. 2016)). In applying this standard, we consider only the evidence that was presented at the suppression hearing. *Id.*

For a challenge to a search warrant, we keep in mind the rules by which a magisterial district judge determines whether probable cause exists:

> Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a "totality of the circumstances" test as set forth in *Illinois v. Gates*, 462 U.S. 213 (1983), and adopted in *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985). A magistrate is to make a "practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." The information offered to establish probable cause must be viewed in a common sense, nontechnical manner.

*Commonwealth v. Carey*, 249 A.3d 1217, 1223–24 (Pa. Super. 2021) (quoting *Commonwealth v. Manuel*, 194 A.3d 1076, 1081 (Pa. Super. 2018)) (citations altered).

A reviewing court, in turn, considers the affidavit of probable cause in its entirety "to determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed." *Harlan*, 208 A.3d at 505 (quoting *Commonwealth v. Wallace*, 42 A.3d 1040, 1049–50 (Pa. 2012)).

Notably, "an officer relying on statements from an ordinary citizen, in contrast to a police informant" has no obligation to "establish the citizen's credibility and reliability" in the affidavit of probable cause. *Commonwealth*

***v. Lyons***, 79 A.3d 1053, 1064–65 (Pa. 2013) (citing ***Commonwealth v. Weidenmoyer***, 539 A.2d 1291, 1295 (Pa. 1988)).

Here, the affidavit of probable cause provided a substantial basis for the magisterial district judge to find probable cause that contraband would be found in the apartment. Longfoot said there were drugs and paraphernalia in the apartment. Hoskins said he smokes a lot of weed. These statements give rise to a fair possibility that a search of the apartment would reveal drugs and paraphernalia. Although no corroboration is required for an ordinary citizen's tip under ***Lyons***, Officer Duffy's observation of Hoskins' nostril corroborated Longfoot's statement that Hoskins snorts Percocet. And while Officer Duffy acknowledged at the suppression hearing that he did not investigate Longfoot further, he was not required to do so. Because the trial court properly concluded that the search warrant was valid, Hoskins' first issue fails.

In his second issue, Hoskins challenges the denial of his pretrial petition for a writ of habeas corpus. He alleges that the Commonwealth failed to establish before trial that he possessed the drugs in the apartment.

Hoskins' second issue is moot. A pretrial motion for a writ of habeas corpus "is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case." ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa. Super. 2016). Here, because the jury reached a verdict after trial, Hoskins' "adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a *prima facie* case." ***Commonwealth v. Lee***, 662 A.2d 645, 650 (Pa. 1995).

Judgment of sentence affirmed.


Judgment Entered.


_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/30/2025</u>