J-A29026-23

2024 PA Super 33

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MOISES GARCIA :
:
Appellant : No. 648 WDA 2023

Appeal from the Judgment of Sentence Entered May 24, 2023
In the Court of Common Pleas of Mercer County Criminal Division at
No(s): CP-43-CR-0000515-2022

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY KUNSELMAN, J.: **FILED: February 27, 2024**

Moises Garcia appeals from his judgment of sentence after he was convicted of drug trafficking crimes.[1] He challenges the partial denial of his motion to suppress evidence and the denial of his motion for bond pending appeal. We affirm.

On May 2, 2022, Corporal Reed Grenci of the Pennsylvania State Police stopped Garcia on Interstate 80 in Mercer County, Pennsylvania. A search of the car Garcia was driving revealed suspected drugs; Corporal Grenci charged Garcia with the above offenses. The charges were held for court.

On August 11, 2022, Garcia filed an omnibus pre-trial motion, in which he moved to suppress all evidence against him. The suppression court heard

___

[1] 35 P.S. § 780-113(a)(30) (possession with intent to deliver a controlled substance); *id.* § 780-113(a)(16) (possession of a controlled substance), and *id.* § 780-113(a)(32) (possession of drug paraphernalia).

the matter on December 6, 2022. The court recounted the facts adduced at the hearing:

> On May 2, 2022, [Garcia] was stopped by Corporal Reed Grenci ("Grenci") for violation of 75 Pa.C.S.A. § 3314[, which prohibits the use of headphones or earphones while driving]. Grenci witnessed [Garcia] driving slowly compared to other traffic and began to pursue [Garcia], noticed [Garcia] was operating a vehicle while wearing an earbud, ran his license plate, discovered the car being driven by [Garcia] was a rental, and conducted a traffic stop. After stopping [Garcia] and obtaining his license and rental agreement, Grenci inquired about the rental being in another name, [Garcia] not being listed as an authorized driver, and [Garcia's] destination; thereby learning [Garcia] was heading from Connecticut to Youngstown, Ohio for approximately five days and [Garcia's] brother had allegedly rented the vehicle. During this discussion Grenci discovered [Garcia] possessed no luggage, Grenci returned to his cruiser to enter [Garcia] into his computer at which time he discovered a prior case with a $750,000.00 bond. Grenci then returned to [Garcia's] car, ordered [Garcia] to exit the vehicle, and began a line of questioning without issuing a citation or returning [Garcia's] documents. When asked on cross examination whether [Garcia] was free to leave at this point, Grenci stated [Garcia] was not and he did not return the documents because he had not fulfilled the purpose of the traffic stop. Grenci asked [Garcia] if he may search the car, [Garcia] denied, and Grenci informed [Garcia] if he refused Grenci would call in the K-9 unit to sniff the car and search the car thereafter if the dog signaled. [Garcia] again denied and the K-9 unit was called, leading to a signal from the dog. Grenci again asked for permission to search to avoid lengthening the process; [Garcia] denied and was taken into custody. Upon the subsequent search of the vehicle, Grenci located a backpack in the back seat which contained allegedly packages of fluorofentanyl (a fentanyl derivative) and heroin.

Suppression Court Opinion, 1/31/23, at 1–2.

On January 31, 2023, the suppression court partially denied Garcia's motion to suppress evidence. Specifically, the court suppressed certain statements made by Garcia but denied suppression as to all other evidence.

Garcia proceeded to a non-jury trial based on stipulated facts. The trial court found Garcia guilty. After conviction and before sentencing, the court denied the Commonwealth's motion to revoke Garcia's bond.

On May 24, 2023, the trial court sentenced Garcia to consecutive terms of 72 to 144 months of incarceration, 24 months of probation, and 12 months of re-entry supervision. Defense counsel requested that Garcia remain on bond pending appeal, which the trial court denied.

Garcia timely appealed. Garcia and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On September 27, 2023, Garcia filed an application for relief with this Court, seeking bond pending appeal. This Court directed the trial court to issue a statement of reasons for its bond order. The trial court complied on October 6, 2023. The Commonwealth filed an answer on October 11, 2023, opposing Garcia's motion. On October 20, 2023, this Court denied Garcia's application for relief by *per curiam* order.

Now, on appeal, Garcia presents the following issues for this Court's review:

1. Did the [trial court] err as a matter of law and/or abuse its discretion when it denied in part, [Garcia's] Motion to Suppress on January 30, 2023[?]

    a. Did the [trial court] err as a matter of law and/or abuse its discretion when it concluded that the police officer had reasonable suspicion to conduct a traffic stop[?]

    b. Did the [trial court] err as a matter of law and/or abuse its discretion when it concluded that the police officer had "reasonable suspicion to extend the detention" of

[Garcia] and extend the investigation of the vehicle [Garcia] was driving[?]

 c. Did the [trial court] err as a matter of law and/or abuse its discretion when it upheld the search warrant used to search the vehicle [Garcia] was driving[?]

2. Did the [trial court] err as a matter of law and/or abuse its discretion by denying [Garcia's] Motion for Bond Pending Appeal in its order dated May 24, 2023[?]

*See* Garcia's Brief, at 5–6.

Garcia's first issues concern the denial of his suppression motion. As such, we review whether the suppression court's findings of fact are supported by the record and whether the court's conclusions of law are correct. *Commonwealth v. Arias*, 286 A.3d 341, 346–47 (Pa. Super. 2022) (citation omitted). If the record supports the factual findings, those facts bind us, and we will not reverse unless the suppression court erred in applying the law. *Id.* at 347. The scope of our review is the evidentiary record from the suppression hearing. *Id.*

## Reasonable Suspicion to Stop Under 75 Pa.C.S.A. § 3314

Garcia argues, foremost, that Corporal Grenci lacked reasonable suspicion to initiate a traffic stop because the officer could not conclude that Garcia was violating Section 3314 of the Vehicle Code. The statute at issue, titled "Prohibiting use of hearing impairment devices," provides:

**(a) General rule.--**No driver shall operate a vehicle while wearing or using one or more headphones or earphones.

**(b) Exception.--**This section does not prohibit the use of hearing aids or other devices for improving the hearing of the driver, **nor does it prohibit the use of a headset in conjunction with a**

**cellular telephone that only provides sound through one ear and allows surrounding sounds to be heard with the other ear**, nor does it prohibit the use of communication equipment by the driver of an emergency vehicle or by motorcycle operators complying with [75 Pa.C.S.A. §] 3525 (relating to protective equipment for motorcycle riders).

75 Pa.C.S.A. § 3314 (emphasis added).

Garcia contends that Corporal Grenci only observed a single earbud and ignored the statutory exception that, according to Grenci, "allows for an earbud in one ear." Grenci's Brief at 17–19.

The Commonwealth responds that Corporal Grenci had reasonable suspicion to stop Garcia to determine whether Garcia had an earbud in his other ear. The Commonwealth notes that the statutory exception uses the word "headset," which would not include an earbud. And the Commonwealth argues that Corporal Grenci was not required to rule out the possibility that Garcia's apparent violation of the law could have an innocent explanation.

Under Pennsylvania law, the level of cause required for a police officer to stop a vehicle for an apparent violation of the Vehicle Code varies based on the officer's observations and the provision at issue. *Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015) (citing *Commonwealth v. Feczko*, 10 A.3d 1285, 1290–91 (Pa. Super. 2010) (*en banc*)). An officer may always stop a vehicle if the officer has **probable cause** to believe that the vehicle or its driver was violating the Vehicle Code. *Id.* at 992. However, an officer may only stop a vehicle based on **reasonable suspicion** of a Vehicle Code violation if the stop would "serve a stated investigatory purpose," *i.e.*, to determine whether a violation occurred. *Id.* at 992–93; *see* 75

- 5 -

Pa.C.S.A. § 6308(b) (authorizing traffic stops for reasonable suspicion of Vehicle Code violations). Here, because Garcia limits his argument to whether Corporal Grenci had the lesser level of cause to suspect a Section 3314 violation, we will accept that the reasonable suspicion standard applies.[2]

Whether an officer has reasonable suspicion depends on the totality of the circumstances:

> The officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Harris*, 176 A.3d 1009, 1021 (Pa. Super. 2017) (quoting *Commonwealth v. Smith*, 917 A.2d 848, 852 (Pa. Super. 2007)) (brackets and ellipses omitted). Notably, a determination of reasonable suspicion "need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002) (citing *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)). Indeed, allowing a reasonable-suspicion stop only after all possibility of innocence is eliminated would be incongruous with the notion that such a

---

[2] One can readily imagine a scenario where further investigation is not needed to establish a violation of Section 3314 of the Vehicle Code. In such a case, an officer would need probable cause to initiate a stop.

stop "must serve a stated investigatory purpose." **Salter**, 121 A.3d at 992. Without any possibility of innocence, there would be nothing for the officer to investigate. Nonetheless, reasonable suspicion of criminal activity requires something more than an observation that an individual is engaging in behavior that many people can do legally. **See Commonwealth v. Hicks**, 208 A.3d 916, 945–46 (Pa. 2019).

As applied to Section 3314, an officer may stop a driver if the officer reasonably suspects that the driver is "using one or more headphones or earphones" and that no statutory exception applies. 75 Pa.C.S.A. § 3314(a), (b). The officer need not conclusively rule out every exception. **Arvizu**, **supra**; **cf. United States v. Powell**, 774 F. App'x 728, 731 & n.11 (3d Cir. 2019) (not requiring an officer to determine whether a Section 3314(b) exception applied before initiating a traffic stop). It is enough that the totality of the officer's observations and inferences therefrom support the reasonable conclusion that the driver's conduct does not fall within an exception. **Harris**, **supra**. This is a lesser burden than proof at trial. **See Commonwealth v. Fretts**, 271 A.3d 383, 391 n.7 (Pa. Super. 2021) (noting in *dicta* that because Section 3314 "does not prohibit all single-ear earbuds," proof of a violation would require something more).

Here, Corporal Grenci's observation of Garcia driving with an earbud in one ear, without the other ear visible, was enough to support a stop for further investigation. The use of one earbud violates Section 3314(a) unless an exception applies. Three exceptions clearly do not apply, as an earbud is not

used "for improving the hearing of the driver," and Garcia was not driving an emergency vehicle or a motorcycle. 75 Pa.C.S.A. § 3314(b). Likewise, it was reasonable for Corporal Grenci to infer that Garcia was not using "a headset in conjunction with a cellular telephone that only provides sound through one ear and allows surrounding sound to be heard with the other ear." ***Id.*** It is not clear that an earbud is a "headset." There was no indication that Garcia was using it "in conjunction with a cellular telephone." And Corporal Grenci could not determine, before stopping Garcia, whether Garcia also had an earbud in his other ear. Under the totality of the circumstances, Corporal Grenci had reasonable suspicion to stop Garcia to investigate further whether Garcia was violating Section 3314.[3] This issue fails.

### Reasonable Suspicion to Prolong the Stop

Garcia argues that Corporal Grenci lacked reasonable suspicion to extend the traffic stop by directing Garcia out of the vehicle, questioning him, and securing a canine sniff. Garcia disputes that the information available to the officer allowed him to go past the primary mission of the stop. He stresses that none of what Corporal Grenci saw and learned about him was illegal.

The permissible duration of a traffic stop, "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and

---

[3] Corporal Grenci's observations provided reasonable suspicion to stop Garcia to further investigate whether Garcia violated Section 3314. We do not opine what additional evidence, if any, would be required to prove the ultimate question of guilt. ***See Commonwealth v. Fretts***, 271 A.3d 383, 391 n.7 (Pa. Super. 2021).

attend to related safety concerns." ***Commonwealth v. Ross***, 297 A.3d 787, 792 (Pa. Super. 2023) (quoting ***Rodriguez v. United States***, 575 U.S. 348, 354 (2015)). This "'includes ordinary inquiries incident to the traffic stop' such as 'checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.'" ***Id.*** (quoting ***Rodriguez***, 575 U.S. at 355). While the officer is completing the mission of the stop, he may direct the driver to exit the vehicle and ask "a moderate number of questions" about the driver's identity and the officer's suspicions. ***Id.*** at 793 (citations omitted).

An officer may prolong a traffic stop if, before completing the purpose of the stop, the officer develops additional suspicion. ***Commonwealth v. Chase***, 960 A.2d 108, 115 n.5 (Pa. 2008). Further reasonable suspicion can support continued investigation, including a canine sniff of the exterior of the vehicle. ***Harris***, 176 A.3d at 1021 (citing ***Commonwealth v. Rogers***, 849 A.2d 1185, 1191 (Pa. 2004)).

Here, the suppression court reasoned that Corporal Grenci had reasonable suspicion to continue his investigation and dispel his suspicions that Garcia was carrying illegal drugs:

> During the moment at which Grenci ordered [Garcia] to exit the vehicle, Grenci was aware of [Garcia's] origin and destination, the alleged duration of his stay (approximately five days), the fact that he was driving a long-term rental car as an unauthorized driver, he takes said trip quarterly, he was traveling without luggage, and he had a sizable bail amount for a prior crime. Based on his knowledge and experience, Grenci articulated the reason the totality of these circumstances piqued his suspicions was due to his knowledge regarding drug traffickers routinely moving

between source cities to transport drugs, using long-term rental cars which are not in their names, performing short turnaround trips (thereby negating the need for luggage), and maintaining higher rates of recidivism. Grenci's knowledge and experience would lead a reasonable officer with his experience and knowledge under the totality of the circumstances to believe criminal wrongdoing was afoot and further investigation was warranted. Grenci was required to establish choate particularity of his suspicions to manifest the reasonable suspicion which is requisite for an investigative detention. Grenci's experience led him to believe the facts known warranted suspicion. Thus, Grenci did establish reasonable suspicion to justify detention.

Suppression Court Opinion, 1/31/23, at 8.

We reach the same conclusion as the suppression court—Corporal Grenci's observations while he was checking Garcia's documents led him to reasonably suspect that Garcia might be transporting drugs. Although each factor alone might not support a continued detention, the totality of what Corporal Grenci saw added up to allow for further investigation. **Harris**, 176 A.3d at 1021 ("[E]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer."). This included conducting a canine sniff of the exterior of the rental vehicle. **Id.** Because reasonable suspicion supported Corporal Grenci's prolonged investigation into Garcia's possible drug activity, this issue fails.[4]

_____

[4] The Commonwealth notes that the officer "even attempted to minimize the length of the stop by asking [Garcia] for consent to search." Commonwealth's Brief at 30–31. We reject the implication that the police can cure an unlawfully continued detention by inviting a suspect to relinquish his privacy rights. As described in this section, however, Corporal Grenci had reasonable suspicion to continue to investigate Garcia.

### Probable Cause to Obtain a Search Warrant

Garcia argues that after his arrest, Corporal Grenci failed to establish probable cause for a warrant to search the vehicle. Although the affidavit stated that a drug detection dog alerted twice to the exterior of the vehicle, Garcia emphasizes that the affidavit did not describe the search in detail, such as what parts of the vehicle the dog sniffed, the duration of the stop, the dog's qualifications,[5] or whether the officer saw items in the vehicle that could contain drugs.

The Constitutions of the United States and of Pennsylvania require search warrants to be issued only "upon probable cause," *i.e.*, "where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." **Commonwealth v. Pacheco**, 263 A.3d 626, 645 (Pa. 2021). On review, we determine "only whether a substantial basis exists for the issuing authority's finding of probable cause" and will not invalidate a warrant through a hyper-technical reading. **Id.** (citing **Illinois v. Gates**, 462 U.S. 213, 236 (1983), and **Commonwealth v. Johnson**, 42 A.3d 1017, 1031 (Pa. 2012)).

Notably, the Supreme Court of Pennsylvania has instructed that when the police already have reasonable suspicion that a vehicle contains drugs, a canine alerting to the outside of the vehicle provides probable cause. **Rogers**,

---

[5] The Commonwealth provided a "drug detector dog certification" at the suppression hearing. Suppression, Commonwealth Exhibit 4.

849 A.2d at 1192. A dog's "indication alone" is sufficient to escalate to this heightened quantum of cause. *Commonwealth v. Green*, 168 A.3d 180, 187 (Pa. Super. 2017).

Here, the affidavit attached to the search warrant describes Corporal Grenci's experience and knowledge about drug traffickers. It recounts the stop and observations that led Corporal Grenci to suspect that Garcia was carrying drugs. The affidavit continues to describe the canine sniff:

> Based upon my observations, taken within the totality of my training and experience and the circumstances of this stop, I believed that criminal activity was afoot. I asked GARCIA for consent to search the vehicle, which he denied. I contacted Tpr. Jonathan CASEY, PSP K9 Unit, and requested his response to the stop.
>
> Tpr. CASEY arrived on scene at approximately 1315 Hrs. He deployed drug detection canine Senna on a search of the exterior of the vehicle. While searching, Canine Senna displayed alert/ indication behavior to the driver's side door seam and alert behavior to the open passenger side front window.

Suppression, Commonwealth Exhibit 3, at 36.

We conclude that the affidavit provided a substantial basis for the issuing authority to find probable cause. After establishing facts that gave rise to Corporal Grenci's reasonable suspicion, the warrant notes that a "drug detection canine" alerted twice to the exterior of the vehicle that Garcia was driving. To require anything more than the same sequence of events from *Rogers* and *Green* would be a hyper-technical reading of the warrant, which is inappropriate on review. *Pacheco*, 263 A.3d at 645. This issue fails.

**Bond Pending Appeal**

In Garcia's final issue, he challenges the trial court's denial of his motion for bond while this appeal remains pending. Garcia notes that the purpose of proceeding to a stipulated non-jury trial was to allow for this appeal of the court's suppression ruling. He emphasizes his consistent appearance at all scheduled court proceedings as well as his strong community ties and family support in Connecticut.

When a criminal defendant has been convicted and sentenced to two years or more of imprisonment (but not life imprisonment or death), "the defendant shall not have the same right to bail as before verdict, but bail may be allowed in the discretion of the judge." Pa.R.Crim.P. 521(B)(2).[6] We therefore review for an abuse of discretion. *See Commonwealth v. Keller*, 248 A.2d 855, 857 (Pa. 1969). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such a lack of support so as to be clearly erroneous." *Commonwealth v. Raboin*, 258 A.3d 412, 422 (Pa. 2021) (citation omitted).

---

[6] Prior to a finding of guilt, an accused person enjoys a constitutional right to bail, reflecting (1) the presumption of innocence, (2) a distaste for sanctions prior to trial and conviction, and (3) the maximum opportunity to prepare a defense. *Commonwealth v. Talley*, 265 A.3d 485, 499 (Pa. 2021) (citing *Commonwealth v. Truesdale*, 296 A.2d 829, 834–35 (Pa. 1972)). These considerations do not apply after conviction and sentencing, when a defendant no longer has a right to bail. *See Commonwealth v. McDermott*, 547 A.2d 1236, 1242 n.5 (Pa. Super. 1988).

A judge who refuses or revokes bail under Rule 521 "shall state on the record the reasons for this decision." Pa.R.Crim.P. 521(C).

Here, the trial court explained on the record its reasons for denying Garcia's oral request to remain on bond pending his appeal:

> THE COURT: And while certainly the nature of the charges as well as the quantity of controlled substances weighs very heavily in my denial of bond, more significant is my realization recently that this offense occurred while [Garcia] was on bond for two other offenses out of a separate jurisdiction, and a different state entirely, which is not insignificant to the Court.
>
> As such, I'll be denying bond at this time, and the Defendant shall be committed to begin serving his sentence.

N.T., Sentencing, 5/24/23, at 31.

The trial court further detailed its considerations in a statement of reasons for denying bond. Trial Court Statement of Reasons, 10/6/23, at 4–7 (including Garcia's prior record, the nature of Garcia's crimes, danger to society, and a lack of mitigating factors such as efforts toward rehabilitation).

We discern no abuse of discretion. The trial court recognized that Garcia, who had just been sentenced to more than a decade of imprisonment in Pennsylvania, had committed serious drug offenses while other cases were pending in Connecticut. This suggested that bail would no longer be effective. *See Keller*, 248 A.2d at 857 & n.4 (considering the public interest in preventing crimes by denying bail pending appeal). We cannot say that the trial court's decision was manifestly unreasonable, was the product of partiality, prejudice, bias, or ill-will, or overrode or misapplied the law. Therefore, this issue fails, and we affirm Garcia's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/27/2024