J-A15017-25

2025 PA Super 258

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LOUIS LEON COLES | : | |
| | : | |
| Appellant | : | No. 1693 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 6, 2024
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0003480-2023

BEFORE:   BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STABILE, J.:                    **FILED: NOVEMBER 14, 2025**

Appellant, Louis Leon Coles, appeals from the judgment of sentence imposed on November 6, 2024, by the Court of Common Pleas of Dauphin County.  He challenges the denial of his suppression motion on the grounds that the officer lacked reasonable suspicion to prolong the traffic stop.  Upon review, we affirm.

On August 9, 2023, Pennsylvania State Police ("PSP") Trooper Gregory Archulet was on routine patrol watching southbound traffic around mile-marker 74 on Interstate 81.[1]  N.T. Suppression, 4/30/24, at 3-4, 6.  After entering the flow of traffic, Trooper Archulet and his partner observed a gray

---

[*] Former Justice specially assigned to the Superior Court.

[1] Although Trooper Archulet's vehicle was equipped with a Mobile Video Recorder ("MVR") and he completed the paperwork necessary to preserve the video, the video ultimately was not preserved.  N.T. Suppression, 4/30/24, at 18-19.

Infiniti sedan with heavily tinted windows travelling in the left lane of travel for over two miles. *Id.* at 7. As a result, Trooper Archulet initiated a traffic stop. *Id.*

Prior to stopping the vehicle, Trooper Archulet ran the license plate and learned the vehicle was registered to a female. *Id.* Appellant, a male, was the driver and sole occupant of the vehicle and provided Trooper Archulet with a Maryland driver's license. *Id.* Initially, Trooper Archulet informed Appellant that he "was going to do [his] best to issue [Appellant] a warning." *Id.* at 10. While speaking with Appellant, Trooper Archulet observed various air freshener devices within the vehicle – one hanging and at least one cannister underneath the seat. *Id.* at 8, 23. Trooper Archulet then returned to his vehicle to run Appellant's name through their system, which showed Appellant had a criminal history, including prior convictions involving firearms and narcotics.[2] *Id.* at 9, 12.

Because Trooper Archulet did not obtain the vehicle registration from Appellant during his initial contact, he returned to Appellant's vehicle and asked for the vehicle registration. *Id.* at 9. He then asked Appellant to exit the vehicle, to which he complied and walked toward the rear of his vehicle. *Id.* at 10. Trooper Archulet shook Appellant's hand and noticed that it was

---

[2] The preliminary hearing transcript, which was attached to Appellant's brief in support of his motion to suppress, indicates that Appellant had a history of narcotics convictions, the most recent was in the late 1990's. N.T. Preliminary Hearing, 8/24/23, at 4. Trooper Archulet did not testify that Appellant had a history of firearms convictions at that time.

moist, which indicated that Appellant was nervous. *Id.* Appellant's nervousness appeared to increase after exiting the vehicle and during their continued conversation. *Id.* at 10-11. Trooper Archulet noted that it was unusual because most people become less nervous after learning that they will only receive a warning. *Id.* He returned to his patrol vehicle and continued conducting the traffic stop. *Id.* at 11.

During this time, Appellant stood outside of the passenger side of the patrol vehicle and answered Trooper Archulet's questions. *Id.* Appellant confirmed that the vehicle belonged to his friend. *Id.* at 11. When asked about his criminal history, Appellant admitted that he was arrested for a domestic violence charge in the 1980's. *Id.* at 12. He omitted, however, the firearms and narcotics convictions that Trooper Archulet had learned were part of his criminal history. *Id.* At that point, Appellant was visibly agitated and his nervousness increased. *Id.*

Moreover, Appellant said he came from Allentown, which based on Trooper Archulet's training and experience, is a source city for narcotics. *Id.* Trooper Archulet asked Appellant if there was anything illegal in the vehicle, to which Appellant said no. *Id.* at 13. Trooper Archulet then specifically asked if there were any firearms in the vehicle and Appellant again said no. *Id.* Appellant also specifically denied that there were any narcotics in the vehicle. *Id.*

Based on Trooper Archulet's observations of the illegal window tint, multiple air fresheners, increased nervousness, travelling from a source city,

- 3 -

and Appellant's untruthful answers regarding his criminal history, he believed there was evidence of a crime inside Appellant's vehicle and asked for Appellant's consent to search the vehicle. *Id.* at 13. Appellant denied consent. *Id.* at 14. Trooper Archulet then requested a canine unit to the scene to conduct an exterior sniff of Appellant's vehicle. *Id.* He testified that it was his duty as a trooper to investigate whenever he observes behaviors that are consistent with previous criminal cases. *Id.* at 27. It took approximately 45 to 50 minutes for the canine to arrive. *Id.*

After arriving on scene, the canine did an exterior sniff and alerted for the presence of narcotics. *Id.* at 16. Thereafter, Trooper Archulet again requested consent to search Appellant's vehicle roadside and advised that if he denied consent, the vehicle would be towed to apply for a search warrant. *Id.* at 16-17. Appellant denied consent. *Id.* at 17. He was detained, the vehicle was towed and Trooper Archulet applied for a search warrant. *Id.* at 17. A search of the vehicle revealed 20 grams of crack cocaine, a single razor blade with white residue, a plastic bag that contained small blue plastic bags, and a bag of small black rubber bands. *Id.* at 18.

Appellant was charged with manufacture, delivery, or possession with intent to manufacture or deliver ("PWI"), use or possession of drug paraphernalia, and the summary offenses of driving in the right lane and improper sunscreening. He filed a motion to suppress and argued that the vehicle "stop extended beyond the period needed to complete the traffic stop and police lacked reasonable suspicion to continue the stop and conduct a

- 4 -

canine sniff[.]" Omnibus Pretrial Motion, 3/26/24, ¶ 2.  Following a hearing, the trial court denied suppression.  The case proceeded to a non-jury trial wherein Appellant was found guilty on all counts.  He was sentenced to an aggregate two and a half to five years' imprisonment, which was stayed by the trial court pending disposition of this appeal.

Both Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant raises the following for our review:

> Whether the suppression court erred in finding that police did not violate [Appellant's] Article I, Section 8 and Fourth Amendment rights against unreasonable seizures and searches where:
>
>> a. the stop went beyond the time required to provide [Appellant] with a ticket or warning and holding [Appellant] at the stop for one hour was unreasonable and;
>>
>> b. police did not possess reasonable suspicion to continue the stop.

Appellant's Brief, at 6.

Our standard of review when addressing a challenge to the denial of a suppression motion is

> limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*.  Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted). Our scope of review is limited to the record created during the suppression hearing. *In re L.J.*, *supra*.

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019). "If there is sufficient evidence of record to support the suppression court's ruling and the court has not misapplied the law, we will not substitute our credibility determinations for those of the suppression court judge." *Commonwealth v. Johnson*, 86 A.3d 182, 187 (Pa. 2014).

Here, Appellant does not challenge the legality of the traffic stop. Instead, Appellant argues he was unlawfully seized when the officer prolonged the traffic stop without reasonable suspicion. *See* Appellant's Brief, at 18-19.

The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens against unreasonable searches and seizures by law enforcement. *See* U.S. Const. amend. IV; Pa. Const. Art. I, § 8. In Pennsylvania, officers must demonstrate ascending levels of suspicion to justify their interactions with citizens. *Commonwealth v. Ross*, 297 A.3d 787, 792 (Pa. Super. 2023) (citation omitted). Generally, a motor vehicle stop is an investigative detention which requires reasonable suspicion of unlawful activity. *Id.*

In the context of a traffic stop, the Supreme Court of the United States explained

> that the duration of police inquiries "is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop . . . and attend to related safety concerns."  A stop becomes unlawful when it "lasts . . . longer than is necessary" to complete its mission, the rationale being that the "authority for the seizure . . . ends when tasks tied to the traffic infraction are – or reasonably should have been – completed."  The Supreme Court elaborated that "the critical question . . . is not whether the inquiry occurs before or after the officer issues a ticket,  . . . but whether it prolongs –, *i.e.*, adds time to – the stop."
>
> "An officer's mission includes ordinary inquiries incident to the traffic stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."  Further, tasks relating to officer safety are also part of a traffic stop's mission when done purely in an interest to protect the officers.  This safety interest stems from the fact that "traffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely."

*Id.* at 792-93 (citing ***Rodriguez v. U.S.***, 575 U.S. 348, 354 (2015)) (brackets omitted).  We are further guided by the following principles:

> To effectuate the safety of officers, during a lawful traffic stop, the officer may order the driver of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot.  Further, an officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.  To that end, for their own safety, officers may ask drivers whether they have a weapon or anything concerning as a matter of course during a traffic stop.
>
> Importantly, not all inquiries during a traffic stop qualify as ordinarily incident to the stop's mission, as measures aimed at finding evidence of other crimes or safety precautions taken to

facilitate detours from the mission do not pass constitutional muster.

*Id.* at 793 (citations omitted).  To establish grounds for reasonable suspicion

the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity.

In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight . . . to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience.  Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct.  Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Sloan*, 303 A.3d 155, 164 (Pa. Super. 2023).

In *Commonwealth v. Mattis*, 252 A.3d 650 (Pa. Super. 2021), a trooper stopped a vehicle for speeding.  *Id.* at 652.  The driver and sole occupant of the vehicle, the defendant, provided his documents and the trooper confirmed there were no active warrants.  *Id.* at 652, 656.  The trooper noticed the defendant was extremely nervous and constantly fidgeting.  *Id.* at 656.  Based on this observation, the trooper asked the defendant to exit the vehicle to figure out why the defendant was so nervous. *Id.* at 656.

We concluded that the trooper lacked reasonable suspicion to prolong the traffic stop:

> The trooper did not [request the defendant to exit his vehicle] in furtherance of his investigation for the speeding violation. Rather, the trooper sought to obtain additional information unrelated to the initial traffic stop. Significantly, once the primary purpose of the initial stop for the speeding violation ended, the trooper's authority to order [the defendant] to exit his car had extinguished.

*Id.* at 656. The defendant's nervousness, by itself, was not a sufficient basis to warrant an investigatory detention. *Id.*

Likewise, in *Commonwealth v. Owens*, 2023 WL 4346820 (Pa. Super. filed July 5, 2023) (unpublished memorandum)[3], a trooper stopped a vehicle for excessive speeding and following another car too closely. *Id.* at \*3. When the trooper approached the vehicle, the driver was smoking a cigar and there were several backpacks and duffel bags in the back seat. *Id.* The vehicle was a rental, and the defendant's license was suspended. *Id.* The trooper asked the driver and female passenger about their travel plans. *Id.* They were travelling from Georgia to New York to attend two graduations for family members. *Id.*

Shortly into the traffic stop, the trooper advised that if the passenger had a valid license and was able to drive, he would let them leave. *Id.* The passenger provided her license and the trooper confirmed she was capable of driving. *Id.* "At this point, the initial purpose of the traffic stop was satisfied[,] and the investigative detention had ended." *Id.*

---

[3] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

Even though the initial purpose of the stop had been satisfied, the trooper continued to question the pair about their travel plans. *Id.* During this questioning, the trooper noted a "significant" discrepancy in the couple's travel plans – the driver said they were going to Brooklyn, New York, while the passenger said they were travelling to New York, New York. *Id.* He held them on the side of the road for over an hour while awaiting a canine unit to conduct an exterior sniff of the vehicle. *Id.*

We concluded that "smoking a cigar, driving a rental car, and not knowing a passenger's exact age did not create a reasonable suspicion that [the defendant] was engaged in criminal activity." *Id.* at *4. Because the traffic stop was completed when the trooper determined that the passenger could drive the vehicle, and he did not learn of the "conflicting itineraries" until after the stop was completed, it was "irrelevant to the 'reasonable suspicion' analysis." *Id.* at *4 n.6

Conversely, we concluded there was reasonable suspicion to prolong a traffic stop in *Commonwealth v. Garcia*, 311 A.3d 1138 (Pa. Super. 2024). There, the defendant was pulled over for driving while wearing headphones. *Id.* at 1142-43. The vehicle was a rental. *Id.* at 1143. During the officer's initial contact with the defendant, he learned that the rental was in a third-party's name, the defendant was not an authorized driver, and he was travelling from Connecticut to Youngstown, Ohio, to visit his brother who allegedly rented the vehicle. *Id.* Despite the defendant stating that he would

be in Ohio for five days, there was no luggage visible. *Id.* When the officer ran the defendant's information in their system, it showed that he had a prior criminal case with a $750,000 bond. *Id.* As a result, the officer asked the defendant to exit the vehicle and began questioning him without returning the documents or issuing a citation. *Id.* When the defendant denied consent to search, the officer requested a canine to the scene for an exterior sniff. *Id.*

Based on the totality of the circumstances, we concluded that the prolonged stop was constitutional because the officer had reasonable suspicion to believe the defendant might be transporting narcotics. *Id.* at 1147. Reasonable suspicion was based upon the following factors: (1) travelling from Connecticut to Ohio, which the defendant said he did quarterly; (2) the duration of the stay; (3) driving a long-term rental as an unauthorized driver; (4) travelling without luggage; and (5) sizable bail for a prior crime. *Id.*

Similarly, in *Commonwealth v. Green*, 168 A.3d 180 (Pa. Super. 2017), a trooper stopped the defendant's vehicle for a speeding violation. *Id.* at 182. When the trooper approached, the defendant, who was the sole occupant, appeared extremely nervous.[4] *Id.* at 181-82. The trooper recognized both the defendant and the vehicle from prior traffic stops. *Id.* at 182. Approximately three months earlier, the trooper stopped the vehicle,

---

[4] The defendant's lips and area around his lips were trembling and his carotid artery was pulsating. *Green*, 168 A.3d at 182.

which was being operated by the owner at the time, and found a hypodermic needle during the stop. *Id.* On another occasion, the trooper stopped the vehicle, in which the defendant was an occupant, and found cocaine and marijuana in a hidden engine compartment. *Id.*

When the trooper asked the defendant for the vehicle registration, the defendant responded that the vehicle was not registered to him. *Id.* The defendant said he was returning from dropping his son off in Philadelphia. *Id.* When the trooper ran a criminal history check it revealed a history of assault and drug offenses. *Id.* Thereafter, the trooper called for backup and asked the defendant to exit the vehicle. *Id.* The defendant denied consent to search the vehicle; therefore, the trooper requested a canine to conduct an exterior search of the vehicle. *Id.*

We concluded that the trooper possessed reasonable suspicion to believe the defendant was trafficking drugs, and the prolonged stop was constitutional. *Id.* at 184. The factors to support reasonable suspicion included: (1) nervousness; (2) vehicle owned by an absent third-party; (3) returning from Philadelphia, a source location for narcotics; (4) lengthy criminal history of assault and drug offenses; and (5) prior police contacts with the defendant and the vehicle.

Here, Trooper Archulet testified that he had reasonable suspicion to believe there was evidence of criminal activity inside Appellant's vehicle based upon: (1) illegal window tint; (2) multiple air fresheners; (3) Appellant's

increased nervousness after being informed he would likely be issued a citation; (4) travelling from Allentown, a known source city for narcotics; and (5) Appellant's untruthful answers regarding his criminal history.

This case is more akin to **Garcia** and **Green**. Trooper Archulet stopped Appellant's vehicle for travelling in the left lane without passing another vehicle, and illegal window tint. The vehicle was registered to a female. Appellant, a male, was the sole occupant and driver. He provided Trooper Archulet with his driver's license and insurance information. Trooper Archulet returned to his vehicle and confirmed that Appellant's documents were valid, and there were no active warrants.

Since he did not obtain the vehicle registration initially and knowing that it was registered to a female driver, Trooper Archulet returned to Appellant's vehicle and asked for the registration. He also asked Appellant to exit the vehicle and stand next to his patrol vehicle while he finished checking the vehicle registration. While speaking with Appellant, Trooper Archulet learned that Appellant was travelling from Allentown, a source city for narcotics, and was untruthful about his criminal history. Unlike **Owens**, Trooper Archulet learned this information before the initial purpose of the stop was satisfied; therefore, it was relevant to a reasonable suspicion analysis.

Based on the totality of the circumstances, we agree with the trial court that Trooper Archulet had reasonable suspicion that Appellant was trafficking

drugs. Therefore, the prolonged traffic stop was constitutional. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/14/2025