J-S45005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JARELL S BROWN | : | |
| | : | |
| Appellant | : | No. 693 MDA 2025 |

Appeal from the Judgment of Sentence Entered May 1, 2025
In the Court of Common Pleas of Lackawanna County
Criminal Division at No: CP-35-CR-0002181-2024

BEFORE:   STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                **FILED MARCH 25, 2026**

Appellant, Jarrell S. Brown, appeals from the judgment of sentence imposed on May 1, 2025, by the Court of Common Pleas of Lackawanna County.  He challenges the denial of his suppression motion on the grounds that the officer lacked reasonable suspicion to prolong the traffic stop.  Upon review, we affirm.

The trial court summarized the facts as follows[1]:

Officer [Kevin] Sweeney and Officer Petrucci of the Scranton Police Department conducted a traffic stop for driver [Appellant] and passenger Randolf Jefferson ("Jefferson") on March 14, 2024, at 6:49 p.m. EST.  Both officers wore body cameras that retained audio and visual recordings of the entire interaction.  The officers

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] In lieu of testimony, the parties agreed to submit Appellant's motion to suppress, the Commonwealth's thereto, and body camera footage from the incident to the court for review.  N.T. Suppression, 2/19/25, at 2.

initiated the stop by activating their lights and sirens; [Appellant] complied. Officer Petrucci approached the vehicle on the passenger side and asked [Appellant] to roll down the back windows before requesting license and registration. Officer Sweeney's bodycam footage showed [Appellant] holding a lit Black & Mild cigar.

After [Appellant] provided his license, Officer Petrucci said the vehicle had a suspended registration due to insurance cancellation. Then, Officer Petrucci asked [Appellant] for his registration and insurance cards. [Appellant] found the insurance information on his cell phone; however, Officer Petrucci determined that the policy was cancelled. [Appellant] had difficulty finding the registration card. Officer Petrucci said they had to run [Appellant's] information and that he would only receive a warning; however, Officer Petrucci asked [Appellant] to step out of the vehicle. [Appellant] followed Officer Sweeney to the police vehicle for questioning, and Officer Petrucci handed [Appellant's] license to Officer Sweeney. [Appellant] questioned the necessity of exiting his vehicle and Officer Sweeney said he conducts every traffic stop this way for safety purposes.

Officer Petrucci asked Jefferson[, the passenger,] to step out of the vehicle and Jefferson complied. While conducting basic questioning, Officer Petrucci asked Jefferson if there were any illegal materials in the vehicle. Jefferson said no. The officer asked if he had a medical marijuana card and Jefferson said no. Officer Petrucci said he asked the questions because of the car's odor, and Jefferson responded that he had marijuana on him; Jefferson gave a bag of marijuana to Officer Petrucci. A second patrol car arrived, and Officer Petrucci asked Jefferson for permission to conduct a body search; Jefferson consented. No further contraband was found on Jefferson. . . .

After Jefferson's body search, Officer Petrucci notified Officer Sweeney that he recovered marijuana from Jefferson. Officer Sweeney asked [Appellant] if there was illegal material in the vehicle and [Appellant] refused to answer questions. Officer Sweeney explained that Jefferson's drug possession is probable cause to obtain a search warrant. Officer Petrucci approached and accused [Appellant] of arguing with Officer Sweeney. While discussing consent to search the vehicle, Officer Petrucci told [Appellant] that a suspended registration gives the police department authority to tow the vehicle and take the tag.

[Appellant] admitted to having a "clip" under the radio and marijuana in the center cons[ole]. Officer Sweeney again asked for consent to search the vehicle, and [Appellant] questioned the necessity to search the entire vehicle because he stated the exact location of the marijuana. Officer Sweeney explained that officers conduct a thorough search in case individuals lie about the contents of the vehicle. [Appellant] then consented to a search. Officer Ivanoff stayed with [Appellant] and Jefferson while Officer Sweeney and Officer Petrucci searched the vehicle. The officers found marijuana in the locations [Appellant] previously identified.

After searching the vehicle, officers waited for a response to warrant checks. Officer Sweeney read [Appellant] and Jefferson their rights because they were "arrestable," but explained that they were not leaving in handcuffs. Officer Petrucci received consent to conduct a body search on [Appellant] and Jefferson and did not find any illegal material. [Appellant] and Jefferson were cleared on warrant checks; Officer Petrucci said they were free to leave and Officer Sweeney returned the license to [Appellant].

Trial Court Opinion, 7/10/25, at 2-5 (citation omitted).

Appellant was later charged with possession of a small amount of marijuana and possession of drug paraphernalia. He filed a motion to suppress and argued that the officers "violated [his] Fourth Amendment rights protecting him from illegal search and seizures when they unnecessarily prolonged the traffic stop." Motion to Suppress, 11/21/24, at 4 (our pagination). The Commonwealth filed a response. In lieu of testimony at a suppression hearing, the parties opted to submit the motion to suppress, the Commonwealth's response thereto, and the officers' body camera footage to the court. Following oral argument, the trial court denied suppression. The case proceeded with a non-jury trial wherein Appellant was found guilty of

possession of a small amount of marijuana.[2] Appellant was sentenced to pay the costs of prosecution only. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant raises a sole issue for our review:

> Whether the trial court erred in issuing its February 19, 2025, order denying [Appellant's] motion to suppress the fruits of the search of his vehicle.

Appellant's Brief, at 2 (unnecessary capitalization omitted).

Our standard of review when addressing a challenge to the denial of a suppression motion is

> limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted). Our scope of review is limited to the record created during the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019). "If there is sufficient evidence of record to support the suppression court's ruling and

---

[2] The Commonwealth *nolle prossed* possession of drug paraphernalia.

the court has not misapplied the law, we will not substitute our credibility determinations for those of the suppression court judge." **Commonwealth v. Johnson**, 86 A.3d 182, 187 (Pa. 2014).

Here, Appellant does not challenge the legality of the traffic stop. Instead, Appellant argues he was unlawfully seized when the officer prolonged the traffic stop without probable cause.[3] **See** Appellant's Brief, at 5. Specifically, Appellant argues that when he was asked to exit the vehicle "to inquire about the personal information, [the officers] unnecessarily prolonged the mission of the traffic stop." **Id.** at 9.

The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens against unreasonable searches and seizures by law enforcement. **See** U.S. Const. amend. IV; Pa. Const. Art. I, § 8. In Pennsylvania, officers must demonstrate ascending levels of suspicion to justify their interactions with citizens. **Commonwealth v. Ross**, 297 A.3d 787, 792 (Pa. Super. 2023) (citation omitted). Generally, a motor vehicle stop is an investigative detention which requires reasonable suspicion of unlawful activity. **Id.**

In the context of a traffic stop, the Supreme Court of the United States explained

---

[3] As discussed *infra*, the correct standard for whether a prolonged traffic stop was constitutional is whether the officer possessed *reasonable suspicion*, not probable cause. **See Commonwealth v. Garcia**, 311 A.3d 1138, 1146 (Pa. Super. 2024).

- 5 -

that the duration of police inquiries "is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop . . . and attend to related safety concerns." A stop becomes unlawful when it "lasts . . . longer than is necessary" to complete its mission, the rationale being that the "authority for the seizure . . . ends when tasks tied to the traffic infraction are – or reasonably should have been – completed." The Supreme Court elaborated that "the critical question . . . is not whether the inquiry occurs before or after the officer issues a ticket, . . . but whether it prolongs –, *i.e.*, adds time to – the stop."

"An officer's mission includes ordinary inquiries incident to the traffic stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Further, tasks relating to officer safety are also part of a traffic stop's mission when done purely in an interest to protect the officers. This safety interest stems from the fact that "traffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely."

*Id.* at 792-93 (citing ***Rodriguez v. U.S.***, 575 U.S. 348, 354 (2015)) (brackets omitted). We are further guided by the following principles:

To effectuate the safety of officers, **during a lawful traffic stop, the officer may order the driver of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion** that criminal activity is afoot. Further, an officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. To that end, for their own safety, officers may ask drivers whether they have a weapon or anything concerning as a matter of course during a traffic stop.

Importantly, not all inquiries during a traffic stop qualify as ordinarily incident to the stop's mission, as measures aimed at finding evidence of other crimes or safety precautions taken to facilitate detours from the mission do not pass constitutional muster.

*Id.* at 793 (citations omitted; emphasis added). Thus, "[a]n officer may prolong a traffic stop if, before completing the purpose of the stop, the officer develops additional suspicion [beyond the reason for the initial stop]."

*Garcia*, 311 A.3d at 1146. To establish grounds for reasonable suspicion

> the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity.
>
> In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight . . . to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Sloan*, 303 A.3d 155, 164 (Pa. Super. 2023).

Here, the trial court found that the officers did not violate Appellant's rights and, under the totality of circumstances, possessed reasonable suspicion to prolong the traffic stop. The court noted the following factors that were present which formed the basis of the officers' reasonable suspicion: (1) odor of marijuana; (2) the passenger's admission to possessing marijuana; (3) the passenger's lack of a medical marijuana card; and (4) Appellant smoking a masking agent, *i.e.*, black and mild cigar, as officers approached the vehicle. *See* Trial Court Opinion, 7/10/25, at 11.

Officers stopped Appellant's vehicle due to an expired registration. Appellant was the driver and was travelling with Jefferson, a passenger. Appellant provided officers with his driver's license and insurance information. He was unable to locate the registration; however, Officer Petrucci informed Appellant he did not have to look further and would run the information through his system. Officer Petrucci then asked Appellant to exit the vehicle while the officer returned to his patrol vehicle to confirm Appellant's documents were valid.

Simultaneously, Officer Sweeney asked Jefferson to exit the vehicle. Officer Sweeney informed Jefferson that the vehicle smelled of marijuana, and asked Jefferson if he had anything illegal on him. Jefferson admitted to having a bag of marijuana on his person and turned it over to Officer Sweeney. Jefferson consented to a search of his person, and no further contraband was recovered.

Thereafter, Officer Sweeney informed Officer Petrucci that Jefferson admitted to having marijuana on his person. As a result, Officer Petrucci asked Appellant if there was anything illegal in the vehicle. After initially refusing to answer, Appellant admitted that there was marijuana in the vehicle and informed the officers specifically where it was located. Officer Sweeney asked for consent, and Appellant questioned why officers needed to search the whole vehicle when he told them where to find it. After some discussion,

Appellant consented to a search of his vehicle.[4]  Officers located the marijuana where Appellant had stated, and no further contraband was recovered.  After officers confirmed that neither Appellant nor Jefferson had an active warrant, Officer Sweeney returned Appellant's license and allowed them to leave the scene.

The total interaction – from the initial stop until Appellant left – lasted 25 minutes.  The stop occurred around 6:50 p.m.; the search of the vehicle began around 7:01 p.m.; the search concluded at 7:06 p.m.; and Appellant was free to leave at 7:14 p.m.  Although the initial stop was for an expired registration, officers learned additional information, *i.e.*, that Jefferson had marijuana on his person and did not have a valid medical marijuana card, before the initial stop purpose of the stop was satisfied; therefore, the information was relevant to a reasonable suspicion analysis.  Moreover, during a lawful traffic stop, officers may ask the occupants to exit the vehicle absent reasonable suspicion.  ***See Ross***, ***supra***.

Based on the totality of the circumstances, we agree with the trial court that Officers Sweeney and Petrucci had reasonable suspicion that there was marijuana in Appellant's vehicle.  Therefore, the prolonged traffic stop was constitutional.  No relief is due.

Judgment of sentence affirmed.

---

[4] Appellant does not challenge the validity or legality of his consent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/25/2026